# DAWSON, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, November 3, 1903.

1. Contributory Negligence: QUESTION OF MIXED LAW AND FACT. Courts will not, as a matter of law, declare a person guilty of contributory negligence who attempts to get off a car while it is moving slowly. The question of contributory negligence in such cases is one of mixed law and fact, to be determined by the jury under proper instructions.

2. ———: PASSENGER ALIGHTING FROM MOVING CAR. When a passenger on an electric street car touches the electric button to warn the motorman in charge, of his desire to get off, and the car slows down in response to the signal, he has a right to assume that the car will continue to slow until he can get off, and that it will not accelerate its speed before he is off.

3. **Electric Car: SPEED OF.** It is not error in an instruction to the jury to describe an electric car as "moving slowly," when it is going at the rate of three miles an hour.

4. **Verdict: EXCESSIVE.** A verdict for $2,000 for personal injuries, where the plaintiff, a man of seventy-eight years of age, was bruised and hurt about the legs and shoulders, was confined to his bed for six weeks, had pleurisy, spit blood and suffered great mental and bodily pain, is not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for appellant.

(1) The demurrer to the evidence should have been sustained. Colderwood v. North Birmingham, etc., Co., 96 Ala. 318, 2 Am. Neg. Cases 84; Harmon v. Railroad, 17 D. C. 57, 2 Am. Neg. Cas. 296; Outen v. Railroad, 94 Ga. 662, 2 Am. Neg. Cas. 485; Clotworthy v. Railroad, 80 Mo. 220. (2) There was no evidence to justify the giving of the first instruction for the plaintiff. It predicates the finding for the plaintiff upon the fact that the motion of the car "was very slight" when it reached the south side of Chestnut street, and that whilst "said car was so slackened up and was moving slowly," and the plaintiff was alighting, it was "suddenly propelled forward with a greatly accelerated motion," and the plaintiff was thereby thrown and injured. Marr v. Bunker, 92 Mo. App. 651; Day v. Railway, 81 Mo. 471; Nelson Co. v. Shreve, 94 Mo. App. 518.

*Wm. R. Gentry* for respondent.

(1) The case is similar to the following: Cobb v. Railway, 149 Mo. 135; Grace v. Railway, 156 Mo. 295. (2) The very fact that he was an old man made it the duty of the operatives of the car to be the more

careful and to operate the car with that fact in view.
Bertram v. Railway, 154 Mo. 639. (3) It has often
been held in this State that the mere fact that the plain-
tiff is injured while attempting to board or leave a
slowly-moving car is not negligence *per se,* but it is a
question to be submitted to the jury whether, under
all the circumstances in evidence, the plaintiff exercised
ordinary care in attempting to board or leave the car.
Hansberger v. Railway, 82 Mo. App. 566; Fulks v. Rail-
way, 111 Mo. 335; Duncan v. Railway, 48 Mo. App. 659;
Jackson v. Railway, 29 Mo. App. 495; Leslie v. Railway,
88 Mo. 50; Newcomb v. Railway, 69 S. W. 348.

BLAND, P. J.—The petition states, in substance,
that on October 29, 1902, plaintiff was a passenger on
one of defendant's cars going south on Broadway, in the
city of St. Louis; that he boarded the same at Morgan
street, and that his destination was Chestnut street,
where Broadway crosses the same; that when he handed
the conductor his fare (a transfer ticket) he informed
him that he wanted to get off at Chestnut street; that it
was the custom of defendant to stop its cars on the
south side of Chestnut street to allow passengers to
get off; that when the car reached the north side of
Chestnut street he touched the electric button to warn
defendant's motorman and conductor of his intention
to get off on the south side of the street; that as the car
approached the south side of the street it slowed down
as if in response to plaintiff's signal and when the
south side of street was reached the motion of the car
had become so very slight as to be scarcely perceptible
and plaintiff undertook to alight, when the car was sud-
denly started forward with greatly accelerated speed,
whereby plaintiff was thrown and dragged and received
permanent injuries.

The answer was a general denial and an allegation
that, if plaintiff was injured, it was caused by his own
negligence in stepping from a car in rapid motion.

Plaintiff testified that he was a passenger on one of defendant's cars; that when he boarded it at Morgan street and handed the conductor his transfer ticket he informed him that he wanted to get off at Chestnut street; that when the north line of Chestnut street was reached by the car he pushed the electric button and the car slowed down; that he arose from his seat (the rear one in the car) went to the rear platform and attempted to get off, and while he had one foot on the step and was holding on to the handrail, the car started forward with greatly accelerated speed, and with a jerk, and threw him off; that when he let go of the handrail he found himself lying in the street, not able to get up; that he was helped up by Phil Cook, who assisted him across the street to a barber shop and from there he made his way to the office of his real estate agent, who got an ambulance, helped him into it, hauled him to a car line, and assisted him into the car which conveyed him to Wellston, in St. Louis county, within a few miles of his home; that he was lifted from the car into his buggy and driven home to his farm in St. Louis county; that his legs and shoulders were badly bruised and hurt and that he was badly shocked; that he was confined to his bed (propped up, not being able to lie down) for five or six weeks; had pleurisy, spat blood, and suffered great bodily and mental pain; that his legs for a time appeared to be paralyzed, and they had not yet recovered; that he was still lame, unable to walk without the aid of a cane and still suffered bodily pain in his lower limbs; that prior to the injury, he was strong and healthy, able to look after his farm affairs and to do farm work, but had not been able to do anything after the injury; that he was seventy-eight years old (when he testified).

He further testified that he was familiar with the operation of cars in the city of St. Louis; that he owned property in the city and was in the habit of coming to town from his farm in St. Louis county on an average

of once a week; that he would drive to Wellston, put up his horses and come to town on a street car.

In respect to the speed of the car, he testified as follows:

"Q. Now tell us about how fast the car was moving as you started to get down? A. I couldn't tell you exactly, because it was moving a tolerably fair speed; and after the jerk, and I was thrown, the car never stopped. . . .

"Q. When you went to get off it was going at the rate of speed, you say, that they go to let young men get off? A. Yes, sir.

"Q. Then it was moving more than barely perceptibly? A. Yes, sir.

"Q. It was moving at some rate of speed? A. Yes, sir.

"Q. You have driven a horse which was going three or four miles an hour? A. Yes, sir; I guess it was going about maybe three.

"Q. At the time you went to get off? A. Yes, sir."

Phil Cook, who saw the accident, testified in respect thereto and the speed of the car as follows:

"Q. When it reached the south side of Chestnut street, was the car moving rapidly or slowly? A. Moving at a pretty fair rate of speed.

"Q. Well, tell all you saw, now? A. Well, I will state that I saw Mr. Dawson have hold of the rail. He was dragged along by the car about seven feet, and he finally let go and the car kept on going.

"Q. I will ask you with regard to the movement of the car from the time you first saw it until the time Mr. Dawson was thrown, as to whether there was any change in the rate of speed or not? A. Well, the speed kept on increasing from the time that I saw him until he finally let go. . . .

"Q. Did you notice how fast it was going, whether it slowed down or not? A. It had slowed down until

it got to the crossing; it slowed up then, and just about the time he was to get off, it increased its speed again.

"Q.    Just about the time he was to get off, I understood you to say, it increased its speed? A.   Yes, sir.

"Q.    And just prior to that it had slowed down? A.   Yes, sir. . . .

"Q.    Is it not a fact the first you saw of him he was holding by his hand and being dragged? A.   I saw him as he was going to step off the step to get off the car, and just as he was about to get off the car the signal was given for the car to go ahead and he was dragged about seven or eight feet, probably."

Plaintiff testified that the shock and bruises caused by his fall caused him a great deal of physical pain and suffering, and that his physical suffering had not ceased. His medical bill was shown to be one hundred dollars.

Defendant offered no witnesses, who were present and saw the accident, but offered expert testimony, in respect to plaintiff's injuries, tending to show that they were not severe and had entirely disappeared.

Defendant demurred to plaintiff's evidence on the ground that it showed conclusively, and as a matter of law, that he was guilty of such negligence, in attempting to get off a fast-moving car as to preclude his right of recovery. The court denied the demurrer. This ruling is assigned as error.

1.    The evidence is that the car was moving at a speed of about three miles an hour when plaintiff attempted to get off. If the court could not say, as a matter of law, that it was negligence *per se* for the plaintiff, considering his age, strength, activity, condition of health, and the surrounding conditions, to attempt to get off a car moving at a speed of about three miles per hour, then the demurrer to plaintiff's evidence was properly overruled.

In respect to a similar question, the Supreme Court, in Fulks v. Railway, 111 Mo. at page 340, said: "To attempt to get on or off a train in rapid motion would

be an act of gross negligence; but it is generally held that the court will not, as a matter of law, declare a person guilty of contributory negligence who attempts to get on or off a train while it is moving slowly, especially at a platform. The question of contributory negligence in such cases is one of mixed law and fact, and should be determined by the jury, under the guide of proper instructions, in the light of all the attending circumstances. Such has been the repeated ruling of this and other courts. Doss v. Railroad, 59 Mo. 27; Swigert v. Railroad, 75 Mo. 475; Leslie v. Railroad, 88 Mo. 51; Clotworthy v. Railroad, 80 Mo. 221; Straus v. Railroad, 75 Mo. 185; Weber v. Railroad, 100 Mo. 194; Filer v. Railroad, 49 N. Y. 47; Bucher v. Railroad, 98 N. Y. 128; Johnson v. Railroad, 70 Pa. St. 357.''

In Hansberger v. Railway, 82 Mo. App. 566, it was held to be negligence *per se* for one to attempt to get on a car in rapid motion, but not so if the car was moving from one to three miles an hour; that when so moving it was a mixed question of law and fact to be submitted to the jury under proper instructions.

In Leslie v. Railway, 88 Mo. 50, it was ruled that the question of contributory negligence in getting off a moving train was one for the jury to determine from all the circumstances.

There is another view of the case which we think clearly justifies the court in refusing the demurrer. It is this: According to plaintiff's evidence he touched the electric button to warn defendant's servants in charge of the car of his desire to get off on the south side of Chestnut street, the car slowed down in response, as he supposed, to let him off. In these circumstances he had a right to assume that the car would continue to slow down until he got off, not that it would suddenly accelerate its speed before he was off. On this evidence it would be very harsh law to adjudge the plaintiff guilty of negligence *per se,* and deny him any relief.

2.    The first instruction for plaintiff, in mentioning the speed of the car, used the language of the petition, to-wit: "moving slowly." Defendant objects to this term as describing the motion of the car and contends that it is not supported by the evidence. "Slowly" is a relative term when applied to a moving object and must be measured according to the ordinary speed of the person or thing in question. Three miles an hour is slow motion for a rapid transit car. It may or may not be sufficiently slow to allow a passenger to get off the car in safety. Whether he might do so or not would depend largely upon the surroundings and the agility and expertness of the person alighting, and for this reason is a question of fact for the jury to pass on from the evidence, guided by proper instructions. We can see no substantial objection to the use of the word "slowly," in the instruction, to describe the speed of the car, especially so in view of the other instructions which very fully, very fairly and correctly submitted the issue of contributory negligence to the jury.

3.    The contention that the verdict of two thousand dollars is excessive, we think, is without merit. Pecuniary compensation for physical and mental pain caused by bodily injury and shock, continuing for weeks months and probably years, is hard to estimate. Two men would hardly name the same sum and when twelve have agreed upon one sum, it should be accepted as just, unless there is evidence that they were influenced by prejudice or passion. Nothing of the kind is manifest in this record and the judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.