# Richmond.

## GARRETT W. SCOTT, EMPLOYER, AND UNITED STATES FIDELITY AND GUARANTY COMPANY, INSURER, *v.* CHARLES E. WILLIS.

### March 22, 1928.

### Absent, Burks, J.

1. APPEAL AND ERROR—*Workmen's Compensation Act—Award of Industrial Commission—Right of Petitioner to Transcript of Evidence before Commission—Case at Bar.*—On an appeal from an award of the Industrial Commission, where the evidence is conflicting, the transcript of the evidence is no part of the record and all a petitioner is entitled to is that part of the record showing the findings of fact, but where an award of the Industrial Commission is attacked on the ground that the evidence showed that the injury suffered by the claimant did not arise out of and in the course of his employment, there being no conflict in the evidence, a question of law is raised, and the petitioner has the right to have the evidence certified, so that this question of law may be determined.

2. APPEAL AND ERROR—*Workmen's Compensation Act—Award of Industrial Commission—Right of Petitioner to Transcript of Evidence before Commission.*—Where the only complaint against an award of the Industrial Commission is that the evidence is insufficient to support the finding of the Industrial Commission, there being no conflict in the evidence, a question of law is raised, and petitioner for a writ of error is entitled to have the evidence certified.

3. WORKMEN'S COMPENSATION ACT—*Award of Industrial Commission—Evidence Insufficient to Support Award.*—If there be no evidence upon which an award can be legally based, then clearly an award which is unsupported by evidence is an illegal award.

4. WORKMEN'S COMPENSATION ACT—*Course of Employment—Going to and Returning from Work—Employer Contracting to Transport Workman.*—An employee while on his way to work is not in the course of his employment. But where the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation

to or from his work, the period of service continues during the time of transportation, and if an injury occurs during the course of transportation it is held to have arisen out of and in the course of the employment.

5. Workmen's Compensation Act—*Going to and Returning from Work— Employer Contracting to Transport Workman—Case at Bar.*—In the instant case, a proceeding under the workmen's compensation act, the employer had contracted to transport employee to and from work. The employer while conceding that if the injury had occurred to the claimant during the journey and while the truck which was transporting him was in motion, his injury would have been compensable, contended that because claimant had alighted on the highway, the obligation of the employer ceased the instant he reached the ground.

   *Held:* That to sustain the employer's contention would be too narrow a construction of the act.

6. Workmen's Compensation Act—*Going to and Returning from Work— Employer Contracting to Transport Workman—Case at Bar.*—In the instant case employer had contracted to transport his employee to and from his work. The employee was injured when he stepped from the truck to the highway which he had to cross to reach his home.

   *Held:* That the journey of the employee had not ended, and that the transportation to his home was not completed until he reached a point which exempted him from the risks incident to that particular journey.

7. Workmen's Compensation Act—*Going to and Returning from Work— Employer Contracting to Transport Workman—Case at Bar.*—In the instant case an employer contracted to transport his employee to and from his work. The employee was injured returning to his home from work. The truck upon which he was riding stopped on the right-hand side of the road. Claimant had to cross the road to reach his home. He testified that he alighted and started to cross the road and when he got two steps on the macadam was struck by an approaching automobile. He also testified that he "had just got off the truck and taken about six steps around the rear end" of it when he was hit. Defendant laid emphasis on claimant's testimony that he had got about two steps on the macadam when he was struck. But the two steps about which claimant spoke might fairly be construed to be two steps from the edge of the right-hand side of the highway behind the truck. The driver of the automobile which struck claimant testified "he just stepped off, I couldn't tell you how far he was."

   *Held:* That claimant's journey had not ended; that he was in the act of leaving the vehicle of his employer, seeking a safe place on the

sidewalk, and that the injury was so close in time and space as to be an incident of the transportation, and hence that it arose out of and in the course of claimant's employment.

Error to an award of the Industrial Commission of Virginia.

*Affirmed.*

The opinion states the case.

*Sinnott, May & Leaman* and *Roger B. Copinger,* for the plaintiff in error.

*Sam N. Hurst,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

An award in favor of the employee, Willis, is here attacked upon the ground that the evidence shows that the injury suffered by the claimant did not arise out of and in the course of his employment.

[1, 2] One of the questions raised in the argument is as to whether the petitioners were entitled to a transcript of the evidence before the commission, as a part of the record. The statement is made, relying upon Code, section 1887 (61), as construed in *Stonega Coal & Coke Co.* v. *Sutherland,* 136 Va. 489, 118 S. E. 133, and *Burleson* v. *Coal Co.,* 145 Va. 79, 133 S. E. 663, that the commission contends that the transcript of the evidence is no part of the record, and that all the petitioners were entitled to was that part of the record showing the findings of fact. This is doubtless true, where the evidence is conflicting, but in cases like this, where the only complaint is that the evidence is insufficient to support a finding, there being no conflict, a question of law is raised. The petitioners

contend that they have the right to have the evidence certified, so that this question of law may be determined.

[3] We agree with this contention of the petitioners, because if in fact there be no evidence upon which an award can be legally based, then clearly an award which is unsupported by evidence is an illegal award. It is almost, if not quite, equivalent to a demurrer to the evidence.

Upon motion of the petitioners here, the evidence in this case has been certified and is before us.

The controlling facts are these: The claimant lives at Big Stone Gap, Virginia, and on the day of the injury, November 27, 1926, was employed by Garrett W. Scott as an ordinary helper, and sometimes as a substitute truck driver, hauling material for the employer at that particular time for the construction of a bridge. His contract of employment provided that he was to receive free transportation to and from his home at Big Stone Gap and the place where he was required to work. On the day of the injury, while the truck was at or near Big Stone Gap, it stopped on the extreme right-hand side of the highway, where the plaintiff alighted for the purpose of proceeding across the highway to his home, about two blocks distant.

In the attack upon the award of the Commission, this is the evidence which is emphasized:

The plaintiff, in answer to one of the questions propounded to him, stated: "The truck from which I alighted just before I got hurt was sitting close to the right-hand side of the road headed toward Big Stone Gap. I got off that truck on its right side, which put me nearer the ditch line, and walked up to the back of the truck and started across the road going toward my home and when I got about just two steps on the

macadam the car came up going toward Appalachia over on the side next to the truck. I made a jump to go across the road and get out of his way on that side and did get out of the way, and the driver of this car cut his wheels in toward me and struck me."

This, however, is not all of the evidence. In answer to another question, as to what happened to him on that day, he says: "I was coming home from work with the truck; they stopped the truck for me to get off and moved out, and just as it moved out an automobile struck me;" and in answer to another question he said: "I had just got off the truck and taken about six steps around the rear end and was hit."

It is observed in passing that the two steps which he speaks of making may fairly be construed to be two steps from the edge of the right-hand side of the highway, behind the truck—not two steps clear of the rear end of the truck and on the highway. His home was about two blocks away, and it was necessary for him to cross the highway to reach it.

The driver of the automobile which struck him thus describes the accident: When asked: "When did you first see Mr. Willis?" he said: "Seems to me like I was right at the car and saw him about the time he stepped off." And again, that he was "right at the car, at the truck, when I saw him step off." When asked: "When you first saw Mr. Willis how far toward the center of the road was he past the truck?" he said: "Well, I don't know; he just stepped off; I couldn't tell you how far he was." And he testified that he thought it was the right side of his car that struck him.

Upon this evidence the commission, after finding that the claimant sustained an accident, resulting in a broken leg, found this: "The evidence shows that Scott was an employer engaged in construction work

and that his contract of employment with his various employees, who seem to have resided in the neighborhood of Big Stone Gap, provided that they would be called for by one of his trucks each morning, conveyed to the place of their employment, and returned at the conclusion of the day's work.    *    *    *

"While the claimant was leaving the truck in which he was returning at the conclusion of the day's work, he was struck by an automobile driven by a man named Joe Smith. It was admitted that Smith was in no manner connected with the defendant."

There seems to be now no question as to the law, and it is conceded by counsel for the plaintiffs in error that in view of the contract of the employer to transport the claimant back to his home, if the injury occurred during the transportation, it arose out of and in the course of his employment, and is, therefore, compensable. *Jackson* v. *Atlantic Coast Shipping Co.*, 6 O. I. C. 83.

[4] The rule is thus expressed in *Harrison* v. *Central Construction Co.*, 135 Md. 170, 108 Atl. 874: "When the injury occurs before the beginning or after the termination of work, there are two general rules applicable to the question as to whether it arose out of and in the course of the employment. The first is that an employee while on his way to work is not in the course of his employment. The second is that where the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work, the period of service continues during the time of transportation, and if an injury occurs during the course of transportation it is held to have arisen out of and in the course of the employment." In that case the injury occurred

while the claimant was attempting to board a work-train. *Swanson* v. *Latham* (1917), 92 Conn. 87, 101 Atl. 492; *Littler* v. *George A. Fuller Co.* (1918), 223 N. Y. 369, 119 N. E. 554; *Kent* v. *Virginia-Carolina Chem. Co.*, 143 Va. 62, 129 S. E. 330.

*Stidham* v. *Moore and Sexton*, 8 O. I. C. 1047, holds that: "Where employer furnishes the means of conveying employees to and from work and accident occurs during the trip, compensation will be awarded."

[5-7] While conceding that if the injury had occurred to this claimant during the journey and while the truck was in motion, his injury would have been compensable, it is contended that because he had alighted on the highway, the obligation of the employer ceased the instant he reached the ground. To sustain this contention would be too narrow a construction of the act, which is everywhere liberally construed in favor of the employee. It is also too narrow a construction of the evidence in this case, the substance of which we have recited. It could hardly be doubted, we think, that if the injury had occurred while the claimant was approaching the automobile for the purpose of commencing his journey, either to his work or to his home or while in the act of boarding it, that this would be compensable. It is difficult to fix the precise moment at which liability in such a case would cease—that is, the very instant when the homeward journey is ended; and in this case, under the facts, the question is very close. We agree with the Commission, however, that the journey had not ended, and that the employee was still protected under the act. We think it can certainly be said that the transportation of this claimant to his home was not completed until he had reached a point which exempted him from the risks incident to that particular journey. He was not relieved of the peculiar

risks incident to his journey while alighting from the truck or while necessarily in that part of the highway alloted to vehicles as distinguished from the sidewalks allotted to pedestrians. As in most accidents, it is a question of seconds. We think in this case that his journey had not ended at the time of the claimant's injury; that he was in the act of leaving the vehicle of his employer, seeking a safe place on the sidewalk; and that the injury was so close in time and space as to be an incident of the transportation, and hence that it arose out of and in the course of his employment. If there be any fair doubt about this, we resolve it in favor of the claimant.

We are fully supported in this conclusion by the reasoning applied in *Bountiful Brick Co., et al.,* v. *Industrial Commission of Utah,* 68 Utah ——, 251 Pac. 555. In that case the employee was killed while crossing the tracks of an electric railroad immediately adjacent to the brick yard of his employer and while on his way to work, there being no absolute necessity for him to cross the railroad tracks at that point, because there was a public crossing about 200 yards south of the premises, but it was nevertheless the common habit of the employees to go through a gap in the fence and then across the railroad tracks to the brick yard. In affirming the judgment of the Utah court, sustaining an award, the Supreme Court of the United States (*Bountiful Brick Co., et al.,* v. *Giles, et al.,* U. S. 48 S. Ct. 221, 72 L. Ed. ——), February 20, 1928, said this: "Whether Giles was negligent in entering through the fence where he did, or in crossing the tracks, or in not selecting the safest way, are matters not relevant to the inquiry. Liability was constitutionally imposed under the Utah compensation law if there was a causal connection between the injury and the employment in

which Giles was then engaged substantially contributing to the injury. *Cudahy Co.* v. *Parramore*, 263 U. S. 418, 423-425 (44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532.) And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer." These cases, which are cited in the opinion, fully sustain the principle which we have applied in this case: *Procaccino* v. *Horton & Sons*, 95 Conn. 408, 111 Atl. 594; *Merlino* v. *Connecticut Quarries Co.*, 93 Conn. 57, 104 Atl. 396; *Corvi* v. *Stiles & Reynolds Brick Co.*, 103 Conn. 449, 130 Atl. 674; *Starr Piano Co.* v. *Industrial Acc. Com.*, 181 Cal. 433, 436-438, 184 Pac. 860; *Sundine's Case*, 218 Mass. 1, 4, 105 N. E. 433, L. R. A. 1916 A, 318.

*Affirmed.*