ROY SYLCOX, RESPONDENT, v. NATIONAL LEAD COMPANY, A CORPORATION, AND JOHN KEENEY, APPELLANTS.*—38 S. W. (2d) 497.

St. Louis Court of Appeals. Opinion filed May 5, 1931.

544

*Holland, Lashly & Donnell* for appellants.

*R. T. Brownrigg,* and *Mason, Goodman & Flynn,* for respondent.

BENNICK, C.—This is an action for damages for personal injuries sustained by plaintiff on January 7, 1927, when he was thrown to the pavement while in the act of alighting from a bus. It is enough to say by way of identification of the parties to the action that plaintiff was in the employ of defendant National Lead Company, which, as its name implies, is a corporation engaged in the business of mining lead; that such defendant owned the bus in which plaintiff was riding, having provided it for the purpose of transporting its employees from the mines to their homes; and that defendant John Keeney, who was also in the employ of the corporate defendant, was the driver of the bus. Upon a trial to a jury, a verdict was returned in favor of plaintiff, and against both defendants, in the sum of $3,000. Following the overruling of their motions for a new trial, separate appeals were allowed the defendants to this court, which, by stipulation of counsel, have been consolidated as one cause.

The facts of the case, as they appeared from plaintiff's evidence, and indeed without serious contradiction from defendants' testimony, may be fully gathered from that portion of his amended petition which reads as follows:

"Plaintiff further states that on and prior to the 7th day of January, 1927, he was in the employ of the defendant corporation as a miner, working in one of its shafts located at Pimville, about four miles southeast of Flat River, Missouri.

"Plaintiff further states that on and prior to the said last-named date, he was a resident of Flat River, Missouri, and was employed and paid by said defendant at the rate of $5.55 for each six cars of ore loaded by him, and was also furnished transportation by said defendant as part of the consideration for said work to and from his home at Flat River, Missouri, to the mine; that for said purpose the defendant operated a number of busses. . . .

"Plaintiff further states that in the course of transporting plaintiff and said defendant corporation's other employees from the mine to their homes, if more than one person desired to alight from the bus at the same point, the bus would be stopped, but that the custom was that if only one person desired to alight at a certain point, the bus would be slowed down to four or five miles per

hour at the point desired, and the passenger would be thus discharged from the moving bus.

"Plaintiff further states that on January .7, 1927, having completed his work on the night shift in said defendant's mine at said point, he was being transported. to his home at Flat River, about four o'clock in the morning on said defendant's bus driven by the defendant John Keeney, as chauffeur; that he notified the said driver of said bus that he desired to alight at a certain point on the concrete highway along which defendant's bus was traveling, and said bus was slowed down at said point. by defendant corporation through its chauffeur in charge of the same to a speed of four or five miles an hour, and, as plaintiff was in the act of stepping out, said defendant, suddenly, negligently, and without warning to the plaintiff, accelerated the speed of said bus while plaintiff was in the act of alighting from the same, and plaintiff was thereby, with great violence, thrown to the concrete pavement, and suffered serious, painful, and permanent injuries . . ."

The answer filed by defendant National Lead Company was a general denial, coupled with a plea of contributory negligence, and a further plea that the case was governed by the provisions of the Workmen's Compensation Act.

The answer of defendant John Keeney was identical in all respects with that filed by his codefendant, save for an added feature attacking the right of plaintiff to institute and maintain this action against him.

The separate replies filed by plaintiff were each in the conventional form.

If additional facts in the case, other than those disclosed upon the face of the petition, become material at any stage of the opinion, they will be stated in connection with particular points arising for decision.

The prime insistence of each of the defendants is that the court erred in refusing to give the separate peremptory instructions in the nature of demurrers to the evidence, requested at the close of the entire case. In this connection the contentions of defendant National Lead Company will be first noted, after which the views of defendant Keeney will be considered.

The propriety of the submission of the case to the jury as against defendant National Lead Company turns upon the question of whether the case stated and proved was one within the exclusive purview of the Workmen's Compensation Act. There is no controversy between the parties on this appeal about the fact that the act was in full force and effect for a very considerable period of time prior to the accident, or that plaintiff and his employer, the corporate defendant, were operating under the provisions of the

act in so far as the same were applicable. Consequently, the case which is put to us for decision is whether the injury sustained by plaintiff while alighting from a bus furnished by his employer for the use of plaintiff and his fellow employees in being transported to their homes from their work, the accident occurring at a point some four miles distant from the scene of his actual labors, was "by accident arising out of and in the course of his employment," so as to be solely cognizable before the compensation commission under the provisions of section 3301, Revised Statutes 1929.

Defendant National Lead Company argues that inasmuch as plaintiff was in its employ under a contract of hiring which contemplated that the employer would furnish him the free use of a bus for transporting him to the mine from his home and from the mine back to his home, he was in the course of his employment during the entire period of such transportation, and the injury sustained by him while alighting from the bus was, therefore, within the exclusive purview of the act. Plaintiff admits that an injury sustained by an employee while being transported to his home in a bus provided by his employer would ordinarily be by accident arising out of and in the course of his employment, but counters with the idea that the injury would not be compensable under the statute, if it was occasioned by plaintiff's own act in jumping from the bus while going at a high rate of speed, before it had reached his destination (which was defendant's theory of plaintiff's contributory negligence), nor where it was received at a point far distant from the place of employment, during a period for which he was not paid, and at a time when he was rendering no service to his employer.

Cases arising upon facts almost identical with those at issue have frequently been presented to courts of other jurisdictions having compensation acts, and a wealth of law upon the subject has been written. Generally speaking, it is the scope of the contract of employment which furnishes the determinative test of whether such an accident is one for compensation. In other words, it is the contract of employment, and not the actual commencement of labor, which establishes the relationship of the parties under the act. If the right to transportation is given, either positively or inferentially, by the terms of the contract, the employment begins when the employee boards the bus to go to the scene of his labor; it continues throughout the entire period of transportation; and it terminates when he leaves the bus at his home. If the contract provides in express terms for transportation, there is but small room for controversy, but where its provisions are to be implied from the nature and circumstances of the employment, many considerations may be involved, such as whether the furnishing of transportation was merely an act of courtesy, wholly disassociated and disconnected

548

from the relationship of master and servant; whether the employee received pay for the time spent on the bus; whether the furnishing of transportation was with the knowledge and acquiescence of the employer; and whether the course of the employment may extend beyond the hours of the servant's actual labor, and to places other than the premises upon which his labor is performed.

Disposing of these questions, the courts hold almost unanimously that even though the employee is not paid for the time spent on the bus, he is yet in the course of his employment, if he rides by the employer's order, or with his knowledge and acquiescence; that the relationship of master and servant may extend beyond the hours of the servant's actual labor, and to places other than the premises on which he is employed; that the relationship exists whenever the servant is under the master's control, and subject to his directions; that transportation to and from work may well be one of the incidents of the employment, and an accessory, collateral, or subsidiary part of the contract; that it is something added to the principal part of the contract, as a minor, but none the less a real, feature or detail of the contract; and that consequently, an accident, such as the one we have before us, should be regarded as compensable, because it occurs within the period of the employment, at a place where the employee has a right to be, and while he is engaged in something incidental to his employment proper, because contemplated by it.

These conclusions will be found expressed in the following line of cases from other jurisdictions, which, at the risk of unduly lengthening this opinion, are cited herein for whatever value they may have to the bench and bar: Jett v. Turner, 215 Ala. 352, 110 So. 702; Dominguez v. Pendoia, 46 Cal. App. 220, 188 Pac. 1025; Swanson v. Latham & Crane, 92 Conn. 87, 101 Atl. 492; Scalia v. American Sumatra Tobacco Co., 93 Conn. 82, 105 Atl. 346; Lake v. City of Bridgeport, 102 Conn. 337, 128 Atl. 782; Saba v. Pioneer Contracting Co., 103 Conn. 559, 131 Atl. 394; Flanagan v. Webster & Webster, 107 Conn. 502, 142 Atl. 201; Harrison v. Central Construction Corporation, 135 Md. 170, 108 Atl. 874; In re Donovan, 217 Mass. 76, 104 N. E. 431; Tallon v. Interborough Rapid Transit Co., 193 App. Div. 772, 184 N. Y. S. 588; Distefano v. Standard Shipbuilding Corporation, 203 App. Div. 145, 196 N. Y. S. 452; Onisk v. Knaust Bros., 225 App. Div. 186, 232 N. Y. S. 541; Littler v. Geo. A. Fuller Co., 223 N. Y. 369, 119 N. E. 554; Dunn v. Trego, 279 Pa. 518, 124 Atl. 174; Campagna v. Ziskind, 287 Pa. 403, 135 Atl. 124; Jones v. Casualty Reciprocal Exchange (Tex. Civ. App.), 250 S. W. 1073; Thetford v. London Guarantee & Accident Co. (Tex. Civ. App.), 286 S. W. 1113; Scott v. Willis, 150 Va. 260, 142 S. E. 400; Wabnec v. Clemons Logging Co., 146 Wash. 469, 263 Pac. 592; Rock County v. Industrial Commission, 185 Wis. 134, 200 N. W. 657.

Nor are we without a precedent in our own jurisdiction. In the carefully considered case of Howes v. Stark Bros. Nurseries & Orchards Co., 223 Mo. App. 793, 22 S. W. (2d), 839, a situation was presented where the employee, at the close of his day's work, was injured through the negligence of a third party, while crossing a public highway running through the premises of the employer, his purpose being to board a bus which the employer provided for transporting its employees to their homes in the city of Louisïana, some two miles away. The injury was held to be by accident arising out of and in the course of the employment, and therefore compensable; nor was the decision put upon the ground that the accident happened at or near the employer's premises, as plaintiff attempts to interpret it, but rather it was based upon those general considerations which we have heretofore stated, and the opinion cited for its authority many of the same cases from other jurisdictions.

In the case at bar the transportation to and from his home was furnished to plaintiff by his employer as a part of the consideration for his work. Such fact was solemnly pleaded in his petition, and his evidence tended to show it. There is therefore no occasion to speculate about plaintiff's right to have received transportation, for it was expressly contemplated by his contract of employment. Therefore it was incidental and ancillary to his employment; and in the light of the general law upon the subject, the period of the transportation fell within the course of his employment. So far as the application of the compensation act is concerned, it is of no consequence through whose negligence the accident occurred, even though it may have been the negligence of plaintiff himself; and there is not a hint in the record of intentional, self-inflicted injury. Consequently the situation would clearly seem to be governed by the terms of the compensation act, unless it be true, as plaintiff earnestly insists, that the case is taken from within the purview of the act by the exception to it expressed in Section 3305 (c), Revised Statutes 1929, which reads as follows:

"(c) Without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment,' it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such services."

Plaintiff argues that such clause places a qualifying limitation upon the scope of our compensation act; that it renders the rule of the cases heretofore cited inapplicable; and that, while save for the clause in question it might be proper to hold that plaintiff's injury was by accident arising out of and in the course of his employment, the unmistakable effect of the provision is to exclude the

application of the act in this instance, since plaintiff, when his injury was sustained, was not in or about the premises where his duties were being performed, nor where his services required his presence as a part thereof.

In attempting to construe this provision so as to limit the scope of the act in all instances to the very premises where the employee's actual labor is performed, we think that plaintiff puts too narrow an interpretation upon it. Our Supreme Court has construed this provision as having been intended ''to extend the protection of the law to all employees while in or about any premises where they may be engaged in the performance of their duties, and while at any place where their services, or any act, task, or mission, which forms a necessary part of their services, may reasonably require them to be.'' [Wahlig v. Krenning-Schlapp Grocer Co. (Mo. Sup.), 29 S. W. (2d) 128, 130.]

Now in this case plaintiff did not happen to be riding home from work on the single occasion through the courtesy of his employer, but the furnishing of transportation was a regular service, contemplated by the contract of employment, which plaintiff was permitted, as a matter of right, to make use of. Having been provided for in the contract, it was incidental to, and therefore a part of, the employment, which must be held to have begun when plaintiff boarded the bus to go to his work, and to have terminated when he arrived at his destination after his labor had been performed. Consequently, when injured, he was at a place where his services reasonably required him to be; and such being true, the accident was within the exclusive purview of the compensation act, and the demurrer to the evidence interposed by defendant National Lead Company should, for that reason, have been sustained.

This leaves for consideration the question of whether the peremptory instruction requested by defendant Keeney should likewise have been given. Anticipating our ruling that the case was one for compensation as between plaintiff and his employer, defendant National Lead Company, he argues that he too was relieved from liability at common law by virtue of the provision of the act that the rights and remedies granted to an employee thereunder shall exclude all other rights and remedies; that such provision should be held to refer, not only to rights and remedies theretofore existing against the employer, but also to all rights and remedies of whatsoever nature; that he was not a ''third party'' within the meaning of the act, being only an agency through which the employer was operating; and that even if he were to be held a ''third party,'' nevertheless the sole right to have maintained an action against him was in the employer, and not in plaintiff himself.

The majority of these points have heretofore been resolved contrary to defendant Keeney's contentions. For instance, it stands decided that the provision of Section 3301, Revised Statutes 1929, to the effect that the rights and remedies therein granted to the employee shall exclude all other rights and remedies at common law or otherwise, applies only to rights and remedies theretofore existing in favor of the employee against his employer, and does not serve to take away the employee's common-law right of action against the offending third party. Likewise it is held that the subrogation statute (Section 3309, R. S. 1929) is no bar to the right of the injured employee, as a real party in interest, to maintain an action in his own name against the third party. [McKenzie v. Missouri Stables, Inc. (Mo. App.), 34 S. W. (2d) 136.] Consequently, of the points suggested by defendant Keeney in support of his claim for a reversal, the only one left for decision is whether he was a "third party" within the meaning of the act, for if he was, then a case was made for submission to the jury as against all contentions advanced to the contrary on this appeal.

This question is not wholly unattended with difficulties. There is some reason for the view that the negligent fellow-employee is but the agency or instrumentality through which the employer acts; that he and his employer are engaged in the accomplishment of a related purpose; that the fellow-employee cannot be disassociated from the employer, in that every injury produced by the act of a fellow-employee in the performance of the duties common to him and the injured employee is necessarily by accident arising out of and in the course of the employment; that in such sense he is not a stranger to the relationship existing between the employer and the injured employee; and that such considerations should lead to the conclusion that a "third party" be defined as one for whose negligence the master would not be liable at common law.

We are persuaded, however, that all such views are illogical when taken to their ultimate conclusions, and our study of the question has disclosed that they are unsupported by authority from other jurisdictions. Perhaps one state has taken care of the subject by making provision that the injured employee's common-law rights may be pursued only in the event that his injury is occasioned by the negligence or wrong of another "not in the same employ." But there is no such limitation expressed in our own act, as counsel are well aware, and we have heretofore considered a "third party" as being one upon whom no liability could be entailed under the act. In other words, the whole scope and purpose of the act is to fix and determine the rights and liabilities as between employer and employee; the liability of one at common law is left unaffected by the act, except in so far as it has been expressly taken away by it;

and where one has, and can have, no liability under the act, he is likewise in no position to claim any immunities under it. [Langston v. Selden-Breck Construction Co. (Mo. App.), 37 S. W. (2d) 474.

Now there is no doubt that at common law one servant is liable to another for his own misfeasance, and there is nothing in the compensation act which destroys such liability, or in any way disturbs the common-law relationship existing between coemployees. Certainly the negligent employee is not liable for compensation, and therefore he is a stranger to the act, being a person other than the employee entitled to receive compensation, or the employer liable to pay it. The right of the injured employee to sue the third person depends upon whether the latter is subject to the act. Since the coemployee whose misfeasance produces the injury is not subject to the act, he must be regarded as a "third party," and therefore amenable to an action at common law. Such conclusion may lead to complications in the enforcement of the employer's right of subrogation, but we nevertheless think that it is the logical and necessary conclusion to be drawn from the language of our local act. It follows, therefore, that the peremptory instruction requested by defendant Keeney at the close of all the evidence was properly refused. [Churchill v. Stephens, 91 N. J. L. 195, 102 Atl. 657; Zimmer v. Casey, 296 Pa. 529, 146. Atl. 130; Behr v. Soth, 170 Minn. 278, 212 N. W. 461; Wallace v. Pacific Electric Ry. Co. (Cal. App.), 288 Pac. 834; Perry v. Beverage, 121 Wash. 652, 209 Pac. 1102; Miller Scrap Iron Co. v. Industrial Commission, 173 Wis. 257, 180 N. W. 826.]

Aside from considerations involving the application of the compensation act, defendant Keeney assigns error to two instructions given at the instance of plaintiff. These were instructions 1-a and 3, which dealt with the question of plaintiff's contributory negligence.

Instruction 1-a told the jury that in determining the question of whether plaintiff was guilty of contributory negligence in attempting to alight from the moving bus, they should take into consideration the fact that plaintiff had notified the driver that he desired to alight at the "big tree," and that they should also consider the speed of the bus, plaintiff's age and activity, and experience in alighting from moving vehicles, and all the circumstances shown in evidence.

Instruction 3 told the jury that if they found that plaintiff had given notice to defendant Keeney that he intended to alight at a certain point; that the bus slowed down for the purpose of allowing him to alight at said point; that while he was in the act of alighting, the speed of the bus was suddenly increased; that plaintiff was

thrown solely as a result of said increase in speed; and that if it had not been for the increase in speed, plaintiff would have alighted from the moving bus in safety, then the jury should find in favor of plaintiff on the issue of his contributory negligence.

Defendant argues that the first instruction was erroneous for embodying comments on the evidence, and especially immaterial matters of evidence, such as the reference to the "big tree;" and he claims error in the last instruction in that it authorized the jury to find that plaintiff would not have been injured if the speed of the bus had not been accelerated, when plaintiff's own testimony was that it was running at the rate of fifteen miles an hour.

Suffice it to say that Instruction 1-a fairly submitted the issues raised by the evidence; that it involved no undue comments on detached portions of the evidence; and that the facts submitted for the consideration of the jury were all highly material upon the issue of plaintiff's contributory negligence. [Dawson v. St. Louis Transit Co., 102 Mo. App. 277, 76 S. W. 689.]

The objection to Instruction 3 is founded upon a misconception of the most favorable evidence for plaintiff, which was that the bus had slowed down to a speed of four or five miles an hour, rather than fifteen miles an hour as defendant suggests.

It follows that the judgment should be reversed as to defendant National Lead Company, and affirmed as to defendant John Keeney. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment is, accordingly, reversed as to defendant National Lead Company, and affirmed as to defendant John Keeney. *Haid, P. J.*, and *Becker* and *Nipper, JJ.*, concur.