4l9



# THE ATTORNEY GENERAL

## OF TEXAS

CE DANIEL
RNEY GENERAL

AUSTIN, TEXAS

*affirmed by*
*C - 301*
*C- 640*

December 20, 1949

Hon. Claude Gilmer, Chairman
Board for Texas State Hospitals
and Special Schools
Austin, Texas

Opinion No. V-977

Re: The applicability of a
city building code to
construction on State
property within the
city limits.

Dear Sir:

Your letter states that:

"At the present time, this Board is construct-
ing two employees' residences at the Austin State
Hospital. Specifications call for a two-inch bath-
room vent. An ordinance of the City of Austin re-
quires a four-inch vent.

"The City of Austin is threatening to sue for
revocation of the license of the contracting plumb-
ing firm, if they proceed with the State's specifica-
tions.

"Question: Does a city ordinance relative con-
struction govern construction on state property with-
in the city limits?"

It is our opinion that your Board need not be governed
by the city building code in regard to the plumbing specifications
in the buildings mentioned.

The question of the applicability of municipal ordi-
nances to buildings and facilities erected or operated by or un-
der the authority of the state has never been passed upon by any
Texas court. Courts in only six states (California, Georgia, Ken-
tucky, Missouri, Utah, and Wisconsin) have written on this ques-
tion. Of these states, three (Georgia, Kentucky and Wisconsin)
unqualifiedly hold such ordinances inapplicable to state buildings;
the other three (California, Missouri and Utah) hold them applic-
able for some purposes but inapplicable for other purposes.

Our conclusion from these cases is that it is a matter of statutory interpretation as to whether municipal ordinances apply to buildings erected or operated by or under the authority of the State. Each case requires an examination of the statutes to determine what powers have been given by the legislature to the particular state board or agency involved and what powers can be exercised by the municipality. If the regulatory power in question has been given by the legislature to the state board or agency, the effect is to limit the comparable regulatory power of the municipality in so far as it conflicts or is inconsistent with the power given the board or agency.

The case most nearly in point on this question, because of the type of regulation involved, is Board of Education of City of St. Louis v. City of St. Louis, 267 Mo. 356, 184 S.W. 975 (1916). This was an action to enjoin the city and its supervisor of plumbing from interfering with the construction of a school building in the city. The ordinance sought to be enforced by the city pertained, as does the one now in question, to the type of vents to be used in the building. Affirming a judgment for the plaintiff, the court said:

"... There is no question raised as to reasonableness of the ordinances of the city or regulations of its board of public improvements, nor as to whether either system of venting is superior to the other, but the case is presented and discussed upon the broad proposition as to whether or not the board of education, in this particular, is subject to the ordinances and regulations of the city in this respect. ...

"Section 26 of article 3 of the charter then in force provided, among other things, that the mayor and assembly shall have power, within the city, by ordinance not inconsistent with the Constitution or any law of this state or of this charter, to do the following things: In clause 1, to construct and keep in repair all bridges, streets, sewers, and drains, and to regulate the use thereof; in clause 12, to provide for the safe construction, inspection, and repairs of all private and public buildings within the city; and in clause 14, to pass all ordinances not inconsistent with the provisions of the charter or the laws of the state as may be expedient in regard to the peace, good government, health, and welfare of the city.

" ...

"The powers and duties of this board (of education)

were highly specialized in the act, and included the 'general and supervising control, governing, and management of the public schools, and public school property in such city,' the power to appoint such officers, agents and employes as it may deem necessary and proper, to make, amend, and repeal rules and by-laws for the government, regulation and management of the public schools and school property in such city, and exercise generally all powers in the administration of the public school system therein, and have all the powers of other school districts under the laws of the state except as herein provided. Particularizing further, it provides for the appointment by the board of education of a commissioner of school buildings who 'shall be charged with the care of the public school buildings of such city, and with the responsibility for the ventilation, warming, sanitary condition and proper repair thereof, and shall prepare, or cause to be prepared, all specifications and drawings required, and shall superintend all the construction and repair of all such buildings.' In the performance of these duties he was required to appoint such assistants as should be authorized by the board of education, one of whom 'shall be a trained and educated engineer, qualified to design and construct the heating, lighting, ventilating, and sanitary machinery and apparatus connected with the public school buildings.

"It will be noted that this act not only gives the board of education plenary power with reference to the construction, maintenance, and care of the public school buildings of the city, but descends into matters connected with the health and comfort of the pupils, including the designing as well as the construction and maintenance of the very appliance, which are the subject of this litigation, ventilating and sanitary machinery and apparatus to be installed and maintained for the removal from the building of foul and noxious air necessarily generated in the use of the water-closets.

"We have been favored by counsel on both sides with exhaustive and highly interesting briefs and arguments relating to the presumptions which should prevail in determining whether laws of the character of the charter of St. Louis and ordinances passed in pursuance of its terms are applicable to the sovereign, and whether they are repealed by general laws which do not in terms mention them. We cannot appreciate the application of either of these questions to this case. The first does not rest upon presumption, for sovereign-

ty itself has dealt with the subject of the construction and management of the property which is held and used by its agents for the highest governmental purposes, and we have to look no further than its legislative declarations to determine in whom the authority claimed by each of the parties to this proceeding is vested; and as to the second question so ably argued we have only to look to the converse of the proposition stated by counsel for appellant. The question is not whether a law of general application in the City of St. Louis impliedly repeals any of the provisions of a special act or charter for the government of that community, but it is whether the general charter yields to the provisions of a law having special application to particular matters and things within the field of its operation. The statement of this question includes its answer.

"... We have carefully examined the authorities cited by the appellant, and find but one, Pasadena School District v. Pasadena, 166 Cal. 7, 134 Pac. 985, 47 L.R.A. (N.S.) 892, Ann. Cas. 1915B, 1039, which seems to question the view we have taken. ...

"It will be seen that the issue in that case was entirely different from the issue in this. Here the right to erect a building within the limits of the city is not involved, but only the question as to which of those two contending municipalities is clothed by statute with the right to determine interior sanitary arrangements for the ventilation of its water-closets, so as to promote the health and comfort of the pupils and teachers who should be its inmates. We think it is peculiarly appropriate that those charged with the custody and control of the pupils while in the building should also be charged with the protection of their health while engaged in their studies. The Legislature seems to have taken this view of the matter, and has, in our opinion, in unmistakable terms placed that responsibility upon the board. ..."

The other cases which discuss the applicability of municipal ordinances to state agencies under the particular statutes of the jurisdiction are Kentucky Institution for Education of Blind v. City of Louisville, 123 Ky. 767, 97 S.W. 402 (1906); Board of Councilmen of City of Frankfort v. Commonwealth, 243 Ky. 633, 49 S.W.2d 548 (1932); City of Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642 (1909); City of Atlanta v. State, 181 Ga. 346, 182 S.E. 184 (1935); Salt Lake City v. Board of Education of Salt Lake

City, 52 Utah 540, 175 Pac. 654 (1918); City of Fulton v. Sims, 106 S.W. 1094 (1908); Kansas City v. School Dist. of Kansas City, 356 Mo. 364, 201 S.W.2d 930 (1947); Bredeck v. Board of Education of City of St. Louis,        Mo.      , 221 S.W.2d 203 (1949); Pasadena School Dist. v. City of Pasadena, 166 Cal. 7, 134 Pac. 985 (1913); and Ex Parte Means, 14 C.2d 254, 93 P.2d 105 (1939).

In this last case, Ex Parte Means, the question was "whether a state employee (plumber), working entirely on state property, may be punished for his failure to comply with the municipal requirement" of a license. In ordering petitioner discharged from custody, the court said:

"There can be no question concerning the power of the state in its proprietary capacity to lay down the qualifications for its employees. It acts in an exclusive field (citations), and is not subject to the legislative enactments of subordinate governmental agencies. For example, it has been held that a state has no power to require employees of the United States to obtain a license to operate an automobile. 'Such a requirement,' said the Supreme Court of the United States, 'does not merely touch the Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the Government has pronounced sufficient. It is the duty of the Department to employ persons competent for their work and that duty it must be presumed has been performed.' Johnson v. State of Maryland, 254 U.S. 51,57, 41 S.Ct. 16,17, 65 L. ed. 126. Furthermore, considering the language of the particular enactment now in question, it is a rule of statutory construction based upon sound public policy that the state is not bound by the provisions of a charter or ordinance unless it is mentioned specifically or by necessary implication. (Citations) Courts will not assume a legislative intention on the part of a city council to interfere with the acts of the general government.

In 62 C.J.S. 319-320, it is stated that:

"Property of the states is exempt from municipal regulation in the absence of waiver on the part of the state of its right to regulate its own property; and such waiver will not be presumed. The municipality cannot regulate or control any property which the state has authorized another body or power to control. Thus it has been held under some statutes that, where the legislature has placed the control of public schools in boards

of education, the municipality has no power to regulate the construction of public school buildings, but under other statutes creating school districts a school building within the municipal territory must comply with the municipal requirements."

In 9 Am. Jur. 202, Buildings, Sec. 6, it is said:

"The courts are not entirely agreed as to the applicability of municipal building regulations to buildings erected within the municipal limits by or under the authority of the state, or by a county or other political subdivision of the state. According to well-reasoned cases, a county in erecting buildings within the limits of a municipal corporation must comply with such proper building regulations as the municipality pursuant to its police power has imposed. A like rule has been held applicable to a school district organized by the legislature, which includes the municipal corporation or a part thereof within the limits, notwithstanding the school district is organized under a general law, and its trustees are invested with power to plan and build schoolhouses and control and manage all affairs of the school. However, a legislative grant of police power to a municipal corporation will not be deemed a cession of the legislature's prerogative to govern for itself the institutions of the state which may be located within such municipality, unless it may be clearly gathered from the latter act that such was the legislative intent. Other decisions take the position that municipal building regulations do not apply to school buildings erected within the municipal limits under legislative authority."

Although home rule cities have broad regulatory powers, these powers are limited by the following constitutional and statutory provisions:

" . . . providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State . . . ." (Tex. Const., Art. II, Sec. 5.)

"No charter or any ordinances passed under said charter shall contain any provision inconsistent with the Constitution or general laws of this State. . . ." (Tex. Civ. Stat. (Vernon, 1948) Art. 1165).

This limitation on the power of home rule cities has been recognized by the Texas courts in the following cases: Prescott v. City of Borger, 158 S.W.2d 578 (Tex. Civ. App. 1942, err. ref.); City of Houston v. State, 142 Tex. 190, 176 S.W.2d 928 (1943); City of Corpus Christi v. Texas Driverless Co., 187 S.W.2d 607 (Tex. Civ. App. 1945), mod. 144 Tex. 288, 190 S.W.2d 484; Xydies Amusement Co. v. City of Houston, 185 S.W. 415 (Tex. Civ. App. 1916, err. ref.); Miller v. Uvalde, 20 S.W.2d 403 (Tex. Civ. App. 1929, err. dism.); Ex parte Newberg, 140 Tex. Crim. 211, 143 S.W.2d 786 (1940).

In examining the statutes relating to the Board for Texas State Hospitals and Schools, we find the following provision in the act creating the board:

> "Sec. 2. Upon the effective date of this Act, the Governor shall appoint the Board provided in this Act and the Board shall proceed to organize as required by Section 5 of this Act and employ the Executive Director and such other personnel necessary to carry out the provisions of this Act. Effective September 1, 1949, the control and management of, and all rights, privileges, powers, and duties incident thereto including building, designs and construction of the Texas State Hospitals and Special Schools which are now vested in and exercised by the State Board of Control shall be transferred to, vested in, and exercised by the Board for Texas State Hospitals and Special Schools." (Emphasis supplied). (Acts, 51st Leg., R.S. 1949, ch. 316, p. 588).

Thus, to determine what powers over the design and construction of state hospitals and special schools are now vested in the Board for Texas State Hospitals and Schools, we must examine the statutes to see what powers were possessed by the Board of Control over such buildings. The pertinent provisions of the statutes are as follows:

> "The state Board of Control shall have charge and control of all public buildings, grounds and property of the State. . . ." (Art. 665)

> "The Board shall prepare plans and specifications for improvement and repairs to public buildings or property of the State, and shall superintend through its division of public buildings and grounds, the construction of said work when such supervision is not otherwise especially provided for by law." (Art. 670).

"The Board shall inspect all plans and spec-
ifications for the public buildings and the additions
thereto to be constructed for the State before such
plans and specifications are adopted. The Board
may reject any and all such plans and specifica-
tions, and it shall have full and final superinten-
dence over all buildings, structures or additions
thereto that may be constructed for the State."
(Art. 671).

"The Board shall carefully examine and in-
spect the material and workmanship of each build-
ing, structure and addition thereto built for the
State out of brick or stone or substitutes therefor,
and shall see that the same are constructed in ac-
cordance with the contract plans and specifications
therefor. The work, workmanship and the material
thereof shall be subject to the approval of the Board."
(Art. 672).

"The Board shall give special attention to the
effective maintenance of the State sewers and their
connections in the use of the public buildings, and
shall see that such sewerage and connections at all
times be kept in a sanitary condition. . . ." (Art.
674).

"The Board may select a chief of its division
of design, construction and maintenance who shall
be an architect of not less than five years exper-
ience next preceding his selection in the actual de-
sign, superintendency and construction of buildings."
(Art. 679).

"The Board may employ experts of masonry,
plumbing, electrical construction, landscape garden-
ing, and such other experts as may be necessary,
as assistants to the chief of this division." (empha-
sis supplied) (Art. 680).

These statutes make it clear that there is now vested
in the Board for Texas State Hospitals and Schools full power over
the design, construction, and repair of buildings erected for the
use of the state hospitals and special schools, including the par-
ticular power sought here to be exercised by the city. This power
having been given to the board by the legislature, an attempt by a
municipality, home rule or otherwise, to regulate the construction
of these buildings by ordinances is inconsistent with the above sta-
tutes giving this power to the board. Insofar as such ordinances

are inconsistent with the statutes, they are beyond the power of the municipality and therefore unenforceable as against the board or the State.

As support for a contrary view, we are cited to An act to Promote the Public Health, Acts 1945, ch. 178, p. 234; Art. 4477-1 V.C.S. This Act provides certain minimum standards of sanitation and health protection measures. It contains twenty-four sections and many subsections. Most of the provisions are so worded as to place on specific classes of persons some specific duty to do or not to do some specific thing. Several sections expressly relate to governmental agencies and municipal corporations. The sections to which we are cited do not specifically refer to the state. They read as follows:

"Sec. 8. Any and all public buildings hereafter constructed shall have incorporated therein all such heating, ventilation, plumbing, screening, and rat-proofing features as may be necessary to properly protect the health and safety of the public."

"Sec. 23. All provisions of this Act are hereby declared to constitute minimum requirements of sanitation and health protection within the State of Texas and shall in no way affect the authority of Home Rule Cities to enact more stringent ordinances pertaining to the matters herein referred to, and shall in no way affect the authority of Home Rule Cities to enact ordinances as granted to them under Article XI, Section 5 of the State Constitution, and Articles 1175-76 of the Revised Civil Statutes of 1925."

Even if the above provisions are given the broadest application permitted by their terms, they are no grant of authority to cities to enforce plumbing codes against state agencies authorized by the legislature to construct buildings for the use of the state. Section 8 is a general provision which, we think, does apply to "all public buildings" including those of the State. The effect of such provision, however, is not to place authority in one governmental agency to regulate plumbing in buildings constructed by another, but to place on the proper public officers and agents, state and municipal, the duty to incorporate in any public building constructed under their supervision the necessary features to protect the health and safety of the public.

As we read Section 23, it makes plain the power of home rule cities to enact more stringent ordinances. We find in such section no intent, express or implied, that such cities may regulate plumbing on state property.

It is not our opinion that any state officer or agency may lawfully construct or equip a state building so as to constitute a public nuisance or a danger to public health or safety.

### SUMMARY

The provisions of a city building code, setting up certain plumbing standards, are not applicable to regulate construction of buildings by the State on State property within the city limits.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Ben H. Rice III*

Ben H. Rice, III
Assistant.

BHR:b

APPROVED

*Joe R. Greenhill*

FIRST ASSISTANT
ATTORNEY GENERAL