THE CITY OF HARTFORD *vs.* HERBERT C. PARSONS.

* Third Judicial District, New Haven, June Term, 1913.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

While a city may be authorized, under its police power, to exact from the owner or manager of a theatre, for every performance at which a city fireman or policeman is required to be in attendance, a fee equivalent to such attendant's pay, the intent to impose such an involuntary burden ought to be made clear by the legislative department, which alone can impose it, and not be left to be first discovered by a process of judicial construction.

Section 389 of the ordinances of the city of Hartford (Edition of 1908, p. 134) provides that the owner or manager of a theatre or opera house must have a regular or supernumerary fireman or policeman of the city in attendance at every public performance, and prescribes his duties relative to exits and fire-escapes. It also declares that each day's noncompliance with these provisions, upon the part of

* Transferred from first judicial district.

Hartford *v.* Parsons.

the owner or manager of the theatre, shall constitute a separate offense. *Held* that in the absence of any contractual obligation, the expense of such services must be met by the city, until imposed by express legislation of its common council upon the theatre owner or manager.

Argued June 11th—decided July 30th, 1913.

ACTION to recover for the attendance and services of a city fireman at the defendant's theatre, brought to and tried by the City Court of Hartford, *Bullard, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The city ordinances of Hartford forbid the production of theatrical performances without a license, revocable by the mayor at any time; and further provide that the owner or manager of any theatre shall be required to have in attendance at every public performance a member of the city police force or fire department, charged with the supervision of the fire-escapes and exits. The defendant had for a long time employed one Duffy, a supernumerary policeman to be in attendance at his theatre, and had paid him for his services. About June 1st, 1910, Duffy resigned from the police force and became a deputy-sheriff, but continued to be employed as before by the defendant, although no longer a policeman. A fireman was specially assigned for attendance at the defendant's theatre, and the city rendered a bill to the defendant for $97.50, being the amount of the fireman's pay for the number of days he was at the defendant's theatre; and on the defendant's refusal to pay, this action on the common counts was commenced.

*Alvan W. Hyde,* for the appellant (plaintiff).

*Edward M. Day,* for the appellee (defendant).

BEACH, J. The trial court refused to find that the defendant requested the mayor of the city to have a

fireman assigned for duty at his theatre; and the plaintiff's motion to correct the finding in that regard is denied. The evidence as certified fully justifies the finding of the trial court that the defendant refused to have a policeman or fireman in attendance at his theatre until he was informed by the mayor that he must do so; and that the mayor would revoke his license unless the defendant permitted a policeman or fireman to be in attendance according to the ordinance. Thereupon, at a conference between defendant's counsel and the mayor, it was agreed that the chief of the fire department should assign a fireman to defendant's theatre. There is no proof or finding that the defendant voluntarily requested that a fireman should be assigned to his theatre, much less that he expressly or tacitly agreed to pay the fireman's wages.

The next question is whether the defendant can, in the absence of any such agreement, be held liable in assumpsit by force of the ordinance alone, which reads as follows: "The owner or manager of any theatre or opera house shall be required to have in attendance at every public performance or gathering either a regular or supernumerary member of the city police force or a regular or supernumerary member of the city fire department, who shall, before the opening of such theatre or opera house, see that all exits are unlocked and all fire escapes are ready for immediate use, and that said exits remain unlocked and said fire escapes be ready for immediate use during the entire performance or gathering. Said policeman or fireman shall render a report in writing to the chief of the fire department upon the day succeeding such performance or gathering, or upon the next Monday when such succeeding day falls upon Sunday, certifying whether these instructions were carried out in detail. Each day that the provisions of this section shall not be complied

with on the part of said owner or manager shall constitute a separate offense." Charter and Revised Ordinances of the City of Hartford (1908), p. 134, § 389.

The ordinance is on its face a proper and reasonable exercise of the police power of the city. It is, however, strictly a police regulation. The owner or manager of a theatre is given no option as to whether he will or will not comply with it. It is a regulation imposed for the benefit of the public, and failure to comply with it is declared by the ordinance to be an offense. We have no doubt that the city of Hartford has authority, under its police power, to exact from the owner or manager of a theatre, for every performance at which a fireman or policeman is required to be in attendance, a fee equivalent to his pay, and to make the payment of such fees a condition of the right to maintain a place of amusement, and to punish as an offense the giving of public performances without compliance with such provision. But exactions of this kind, however just and reasonable, are in the nature of an involuntary payment imposed upon the citizen. The intent to impose such a burden should be clearly expressed by the legislative department, which alone has power to impose it; and such intent should not first be discovered by a process of judicial construction. In this case the ordinance does not expressly impose the cost of the service on the owners or managers of theatres. The duty to be performed by the city employees is the duty of seeing to the enforcement of the city ordinances regarding exits and fire-escapes, and of reporting to the chief of the fire department. Whether such a service should be paid for by the city or by the owner of the theatre is a matter upon which reasonable differences of opinion might exist; but, in the absence of any contractual obligation, the expense must rest upon the city until its

common council by express legislation imposes it on the theatre owner.

There is no error.

In this opinion THAYER and RORABACK, Js., concurred; PRENTICE, C. J., and WHEELER, J., dissented.