FRED B. LAKE *vs.* THE CITY OF BRIDGEPORT.

Third Judicial District, New Haven, January Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

Chapter 306 of the Public Acts of 1921 enlarges the original definition of "employee" under the Workmen's Compensation Act to "include any salaried officer or paid member of any police department or fire department of any municipal corporation in the State, irrespective of the manner in which he is appointed or employed." *Held* that the plaintiff, a special policeman appointed by the board of police commissioners of the City of Bridgeport upon the application of the owner of a theatre to preserve order and protect the public therein, was an employee of the city, though the wages which he received from the police department were supplied by the owner.

One is not a "casual employee" under § 5388 of the General Statutes unless his employment, in addition to being "of a casual nature," is also "otherwise than for the purpose of the employer's trade or business;" neither of which conditions applied to the plaintiff's employment which had been continuous since his original appointment in 1916, and which was for the purpose of carrying on the business of the city's police force.

The general rule which excludes from compensation injuries suffered by an employee while using the public highways for the purpose

Lake *v.* Bridgeport.

of going to or returning from work, rests upon the principle that the ordinary contract of employment to render services at a designated place, does not expressly or impliedly control the employee's movements elsewhere; but if it may fairly be said that the contract requires the employee to use the highways as and when directed, the general rule does not apply.

The plaintiff was required by the regulations of the police department to report daily at the nearest precinct before going on duty at the theatre, and it was while on his way to make this report on the day in question that he was struck by an automobile and injured. *Held* that his injuries arose out of and in the course of his employment.

Argued January 22d—decided April 3d, 1925.

APPEAL by the defendant from a finding and award of the Compensation Commissioner of the fourth district in favor of the plaintiff, taken to the Superior Court in Fairfield County, *Marvin, J.,* which rendered judgment dismissing the appeal and affirming the finding and award, from which the defendant appealed. *No error.*

The claimant was appointed a special policeman of the city of Bridgeport September 30th, 1916. It was a part of his duties to preserve peace and order at places to which he was assigned by his superiors. The claimant had been assigned to special police duty at the Strand Theatre in Bridgeport, and was required to report at the police precinct nearest thereto before going on duty, and after going off duty. While on his way to report for duty at the police precinct on January 1st, 1922, he was struck by an automobile on Fairfield Avenue and received injuries resulting in total incapacity for about one year, followed by partial incapacity still continuing at the date of the hearing in February, 1924.

The Compensation Commissioner found, as conclusions of fact, that the claimant was an employee of the respondent city; that he was not a casual em-

ployee, and that his injuries arose out of and in the course of his employment; and awarded compensation and payment of expenses for hospital and medical care.

Respondent appealed to the Superior Court on the ground that the commissioner's conclusions were unsupported by the finding, and that the commissioner erred in refusing to correct the finding as requested. From the dismissal of its appeal by the Superior Court the respondent appeals on substantially the same grounds.

*Joseph J. Devine*, for the appellant (defendant).

*Clifford B. Wilson*, for the appellee (plaintiff).

BEACH, J. The assignments of error for refusals to correct the finding are inextricably involved in the discussion of the three principal questions presented: whether the claimant was an employee of the respondent; whether, if so, he was merely a casual employee; and whether his injuries arose out of and in the course of his employment.

The charter of the city of Bridgeport gives the common council the right to pass ordinances concerning the police department, and in 1914, this ordinance was passed: "All persons now special officers shall cease to be special officers on April 1, 1913 [sic] before, on, or after that date the board of police commissioners may in their discretion, upon the written application of any business firm, corporation, or property owner, which application shall state the reasons for seeking such appointment, appoint one or more persons to be special officers to serve from April 1, 1913, or from the date of their later appointment, as the case may be, the authority as police officers of such special officers, so hereafter appointed shall be limited to the business

of their employment; and such persons so appointed shall cease to be special officers upon the termination of their employment or sooner; upon the revocation of their appointment."

The police commissioners in October, 1920, passed the following resolution: "That all special policemen working for the different theatres and at all public gatherings be assigned to said theatres and public gatherings, at the discretion of the superintendent and that the person or persons in charge of said theatre or public gathering pay this department for such services rendered by said special policeman and this department in turn pay said special policeman for such services rendered."

Prior to the passage of the resolution just quoted, claimant received his pay directly from the person who requested the service rendered; after that date, the testimony shows that the practice was to require the theatre to pay the police department in advance by check, which was endorsed over to the claimant after his week's service had been rendered. Section 5388 of the General Statutes, as amended by § 11 of Chapter 306 of the Public Acts of 1921, enlarges the original definition of "employee" in the Workmen's Compensation Act, by providing that employee ". . . shall also include any salaried officer or paid member of any police department or fire department of any municipal corporation in the state, irrespective of the manner in which he is appointed or employed."

These words were added to the statute at the session of the General Assembly next following the decision in *McDonald* v. *New Haven,* 94 Conn. 403, 109 Atl. 176, which held that a member of the fire department of that city was not an employee as that term was then defined in the Workmen's Compensation Act. And in view of the plain intent to change the law thus

announced, and the broad language of the amendment, we are of opinion that the claimant was an employee of the city of Bridgeport although employed only as a "special" policeman upon the terms above indicated.

It is also apparent from the testimony that the claimant was assigned for duty at the Strand Theatre, not as its servant, but as a policeman representing for the time being the authority of the city of Bridgeport. Manifestly the attendance of a policeman at public gatherings in theatres is as much for the safety of the public as for the benefit of the management. It is actually and ostensibly an exercise of the police power. In *Hartford* v. *Parsons,* 87 Conn. 412, 87 Atl. 736, we held that an ordinance of the city of Hartford requiring the owner or manager of any theatre or opera house to have in attendance at every public performance or gathering a regular or supernumerary member of the city police or fire department to see that the city ordinances as to exits, fire-escapes, etc., were obeyed, was, on its face, a proper and reasonable exercise of the police power of the city; and we further expressed the opinion that the city of Hartford had power to exact from the owner or manager of a theatre, for every performance at which a fireman or policeman was required to be in attendance, a fee equivalent to his pay; but we also held in that case that because the superintendence of a theatrical performance for the safety of the public was an exercise of the police power, the theatre owner could not be compelled to pay for the service rendered in the absence of an agreement or ordinance providing for such payment.

This decision not only establishes the character of the employment of a special policeman while on duty at a public performance in a theatre, but it incidentally destroys the basis of the respondent's contention that

Lake *v.* Bridgeport.

the claimant's employment was at best merely casual; because the statutory definition of a casual employee, requires the concurrence of two conditions; that the employment itself is of a casual nature, and that it is "otherwise than for the purpose of the employer's trade or business." General Statutes, § 5388. Respondent's contention that the claimant while in attendance at the Strand Theatre was not employed in the business of the police force, is inconsistent with the conclusions stated in *Hartford* v. *Parsons,* 87 Conn. 412, 87 Atl. 736.

We think it is also inconsistent with the evidence, for the claimant testified that he neither asked nor received directions as to his duties from the managers of the Strand Theatre, and was given no special instruction or orders, as to his duties by his superiors, except to see that the house was in proper condition, doors open properly and keep order. Neither was his employment casual; he was appointed but once, in 1916, and continued to act as special policeman under that appointment down to the date of his injuries.

The third contention, that the claimant's injuries did not arise out of and in the course of his employment, is based on the fact that he was injured on the public highways while on his way to report for duty at the central police station, and on the claim that his work or duty did not commence until he reported there for assignment. It is undoubtedly the general rule that employees whose area of employment is within defined limits, are not regarded as in the course of their employment while going to and returning from work upon the public highways; nor do the risks incidental to travel on such highways ordinarily arise out of their employment. This is so, because the ordinary contract of employment of a workman to render service at a designated place does not cover his movements outside of that place. He uses the highways as the

public uses them, because he must, and not because his employer by the terms or implications of his contract of employment has the right to require him to use them at the employer's will.

This general rule is subject to many exceptions also based on the terms of the contract of employment express or implied. It may be that his work requires him to travel on the highways. *Larke* v. *Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 97 Atl. 320; *McDonald* v. *Great Atlantic & Pacific Tea Co.,* 95 Conn. 160, 111 Atl. 65. Or that the employer contracts to furnish and does furnish transportation to or from the work. *Swanson* v. *Latham,* 92 Conn. 87, 101 Atl. 492; *Sala* v. *American Sumatra Tobacco Co.,* 93 Conn. 82, 105 Atl. 346. Or that by the terms of his employment he is subject to emergency calls. *Linnane* v. *Aetna Brewing Co.,* 91 Conn. 158, 99 Atl. 507. In the case last cited, the decedent was employed as a fireman, and as the nature of the business required continuous steam pressure, it was understood that firemen might be summoned to report for duty in an emergency. Decedent being so summoned hurried to the plant in a heavy snow storm, and exhaustion caused in part by the exertion brought on pneumonia. We held that the injury was not compensable because it could not be definitely located in point of time or place. Since then the statute has been amended by declaring that an injury may be compensable though not capable of being so located. The significant point of the case is that the exposure and exhaustion incurred on the highway are treated in the opinion as arising out of and in the course of the decedent's employment.

There is still another class of cases in which the employee is injured while using the highway in doing something incidental to his regular employment, for the joint benefit of himself and his employer, with the

knowledge and approval of the employer. *Mason* v. *Alexandre,* 96 Conn. 343, 113 Atl. 925. In that case the award was vacated because the decedent deviated from the highway and was killed while taking a short cut across railway tracks.

These illustrations will serve to show that the fact that the injury was incurred on the public highway is not necessarily inconsistent with the conclusion that it arose out of and in the course of the injured employee's employment.

When we come to apply these decisions to the case at bar, we are confronted with the fact that a policeman does not hold his position under a contract of service or employment; but because of his appointment to and acceptance of public office. *McDonald* v. *New Haven,* 94 Conn. 403, 109 Atl. 176. The analogies persist, but they must be adapted to a disciplinary or quasi-military organization in which the claimant stands at the bottom as a special or supernumerary policeman. We are of opinion that the question in this case is whether the claimant was in the performance of his duty when the injury was received, and if so, whether there was a causal connection between such performance of his duty and the injury.

We have no case directly in point in this State, and have found none except *In re Lyman,* cited on respondent's brief, reported in the Ohio Industrial Commission Reports, No. 114, November 12, 1914, and quoted at length in 7 Neg. & Comp. Cas. p. 412 note. In that case the decedent, a regular police officer, had finished his regular hours of duty, and started for home. His body was found on the right of way of a railroad. In the course of the opinion it is said: "A policeman is regarded as being subject to call, and it is his duty upon call or notice that his services are required, to respond immediately. . . . In such cases we think a policeman

should be regarded as 'on duty,' or, in the words of the statute, 'in the course of his employment.' " Compensation was refused because of absence of any evidence that the decedent "received a notice or order from a superior officer, the execution of which took him to the place where he met his death, or that prior to going there he received information upon which he felt authorized to act upon his own initiative."

The claimant was acting in obedience to the orders of a superior having jurisdiction to control his movements at the time of his injury. If the summons had been special, it could hardly be claimed that he was not in the performance of his duty in responding to it. *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, 99 Atl. 507. That it was general does not lessen its compulsive force, for that was inherent in the claimant's relation to his superiors, who had jurisdiction to control his movements by directing him to proceed to any given place within the city limits at any time. Resolution of October, 1920, *supra.* Sergeant Lyddy testified: "Q. The Police department at all times exercises jurisdiction over the special? A. Yes." The order to report at the central station was a proper exercise of that jurisdiction, and while obeying it the claimant was in the performance of the duties of his office as special policeman. The causal relation of the injury to the order and to the claimant's obedience is too plain to require discussion.

There is no error.

In this opinion the other judges concurred.