EX PARTE MRS. O. A. NEWBERG.

No. 21035. Delivered May 29, 1940.
Rehearing Denied October 30, 1940.

The opinion states the case.

*Wallace B. Moore* and *Ivan Irwin,* both of Dallas, for appellant.

*H. P. Kucera,* City Attorney, *W. B. Pope,* Assistant City Attorney, and *Leo Darley,* Assistant Criminal District Attorney, all of Dallas, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Relator was charged by complaint in the Corporation Court of Dallas, Texas, with numerous violations of ordinance No. 2919, as afterwards amended by the passage of ordinance No. 2939, commonly called the Dance Hall Ordinance of Dallas. She sought release upon a writ of habeas corpus before the judge of the County Criminal Court; failing this, she has appealed to this court.

In substance the dance hall ordinance of the City of Dallas, Texas, divides dance halls into four classes, to-wit, Class A, Class B, Class C, Class D. We are only concerned with Class A in this case as the other classes relate to private dances and dancing schools. The ordinance provides that all night clubs and cabarets, where food or beer or wine is served on the premises, including cafes and restaurants, where patrons are provided with a place to dance are Class A dance halls. With certain exemptions, which are hereinafter more specifically mentioned, all Class A dance halls must pay a license fee of $250.00 per year and must have in attendance at all times during a dance a special police officer of the City of Dallas, Texas, for which the operator of such dance hall must pay the sum of $5.00 to the Assessor and Collector of Taxes of the City of Dallas, Texas.

Relator attacks this amended ordinance on many grounds. The first ground being directed to Section 8 of the original ordi-

nance which provides that in all public dance halls coming under Class "A" there must be present at all times during any dance or ball therein given, and until thirty minutes after such dance closes, a special police officer who shall be detailed by the Chief of Police of Dallas for that purpose, and that the proprietor or licensee of such dance hall shall on the first day of the succeeding month pay into a special fund of the City of Dallas the sum of $5.00 per day that such dance is conducted, said sum to be paid by the dance hall operator, and kept in a special fund for the purpose of paying the salary of such police officer. In other words, the dance hall operator cannot operate unless there is present at such dance a special police officer of the City of Dallas, and such operator must pay in advance the sum of $5.00 per day for the services of such officer.

We are cited to no decisions of this State upholding such a charge. However, we do find decisions of other states in agreement with such a charge, and making same payable upon the part of the proprietor of a dance hall or theater. We also find decisions to the contrary.

That the City of Dallas, operating under a Home Rule Charter, has the right to reasonably regulate public Dance Halls, we take it, is conceded by relator; and that a reasonable license fee may be charged therefor. The powers granted to Home Rule cities under the Constitution are broad, and governed only as to limitations by legislative enactment. We held in Le Gois v. State, 190 S. W. 724, that: "The Legislature of a state has all power to enact laws, except as it may be inhibited by the Constitution of the state or nation. It does not have to look to the Constitution for a grant of power to enact laws, but only to see if it is inhibited from acting. And a city does not since the adoption of section 5 of article 11 longer have to look to the Legislature for a grant of power to act (this being given by the Constitution), but only look to acts of the Legislature to see if it has placed any limitations on the power to act granted by section 5 of article 11. If the Legislature has placed no limitations on the power of a city to act, and the provison is inconsistent with no provision of the Constitution or the general laws of the state, the power of the city is as general and broad as is the power of the Legislature to act. We no longer must look to the Legislature to grant to a city power to amend its charter or to insert therein any given provision, but we only look to the acts of the Legislature to see if that body by any provision adopted has placed any limitations on the power of a city to act in the matter. If therein we find no limitation placed on

the city to amend its charter in any given particular, and such provision is inconsistent with no provision of the Constitution and no general law of the state, the city has the authority to so amend its charter and adopt such provision without any grant of power further than that conferred by section 5 of article 11 of the Constitution. The authority and power is therein granted and conferred on the city by a higher power than the legislative body—the sovereign speaking through its written Constitution."

Under the statute, Art. 1175, Secs. 22 and 23, R. C. S., this city has the power to regulate and license dance halls; the contention of relator being that the classification of dance halls in this ordinance was unreasonable and arbitrary, and the amount of license fees exorbitant.

In the disposition made of this case it is only necessary at this point to say that we think that the city has the power to classify these places of public amusement into the classes here found, and to tax them for license purposes as set forth in the ordinance. Relative to the exemption of halls with 750 seats from the attendance of a peace officer, it is not necessary for us to set forth any holding thereon in the light of what we are going to now say.

We are aware of the holding in the case of Tannerbaum v. Rehm, 152 Ala. 494, 11 L. R. A. (N. S.) 700, 126 Am. St. Rep. 52, 44 So. 532; also the case of New Orleans v. Hop Lee, 104 La. 601, 29 So. 214, and also the case of Harrison v. Baltimore, 1 Gill (Md.) 264; also the Connecticut case of Hartford v. Parsons, 87 Conn. 412, 87 Atl. 736, Am. Cases, 1916 A 1182, as well as some few other jurisdictions that hold that a municipality has the right to demand that the owner of a theatre or other place of amusement provide for the presence of its policemen or firemen at such performances, and such municipality can compel the owner or proprietor of such place to pay the attending policeman or fireman his wage, which must however be a fair and reasonable one.

We are also aware that although there are not found any Texas cases on either side of this controversial question that has disturbed our Brethren of other states, we do find well-reasoned cases holding contrary to the above announced doctrine, as well as 1 Dillon on Mun. Corp., 4th ed., Sec. 398, as well as McQuillin on Mun. Ord., Sec. 188. We do find in Chicago v. Weber, 246 Ill. 304, 34 L. R. A. (N. S.) 306, 92 N. E. 859, 20 Ann. Cas. 359, the following: "In every building in the city

where large numbers of people are employed, or where the public go in crowds, the safety of those in the building would be promoted by having a member of the fire department there, and if the cost of discharging the duty of the public who attend the theaters may be charged to the owner, the same requirement may be made of the owner of every other public building where the public are invited or attend in numbers. The city has power to establish a fire department, to erect engine houses and provide fire engines and other implements for the prevention and extinguishment of fires, but that duty is a duty to the public. If there is power to charge the expenses of performing that public duty to the owner of a theater, there is also power to do the same thing with respect to other owners, and the members of the fire department could be parceled out and stationed in private buildings, so that practically the whole expense of the fire department would be paid by individuals or corporations. If the city has authority to do that, it could accomplish the same result with policemen, who are in the direct exercise of the police power, and they might be stationed in every building where disorder or violation of the law might occur, and the expense be charged to the owner. That the city cannot perform its duties to the public in that way is manifest."

We also find practically the same holding in Waters v. Leech, 3 Ark. 110, and again in O'Neil v. Providence Amusement Co., 108 Atl. 887, in which latter case it was held that the city had no power to prescribe the amount of wage to be paid to a fireman to be stationed in a theatre during theatrical performances therein.

While recognizing that this is a mooted matter, and that there are no cases reported in our State that we find in point, we are called upon to write hereon as of first impression in Texas.

It appears reasonable to us to say that in matters of police protection, it being the one herein presented, that cities possess the taxing power as well as the licensing power, with the proceeds of which it would seem to us that the duty would devolve upon such city to furnish needed police protection to all persons engaged in lawful occupations, and regardless of whether such occupations demanded much or little policing. That such is a public function, and should be offered to all alike, and the expense thereof borne by all alike from the public funds. To allow these expenses to be borne by private parties would, if carried to its final conclusion, result in the proprietor of a large

store, where thousands of people might congregate, to be called upon to bear a substantial part of the city police salaries, or a portion of the city firemen's salaries. Again, a populous neighborhood where a series of burglaries had been committed and a police patrol could be thrown in such a district and each resident thereof be called upon to bear his proportionate part of the salaries paid such police while on this patrol. Again, in the event of a disturbance, or an affray, could it not be said that no policeman will be sent to such scene unless a payment of say $5.00 is made in order to pay his salary for such day? Or again, in the event of a fire in some remote portion of the city, could it not be said that no firemen will be sent thereto unless pay for their services is satisfactorily arranged for, and in advance? To carry such reasoning to its final conclusion, the private citizenship might find all the city policemen, and firemen might have their salaries fastened upon those unfortunate enough to be engaged in some business regulated by the city authorities, thus relieving the municipality of one of its reasons for being called into existence as a portion of our political economy.

We think that Section 8 of this ordinance, providing for the payment of $5.00 per day for a city policeman to be in attendance at any dance given in Class "A" hall, offends against the Fourteenth Amendment to the Constitution of the United States, and infringes against the private right of contract, and that such Section 8 is void and of no force and effect.

We also note that Section 13 of said ordinance provides that in the event any section of this ordinance should be held invalid by a proper court, then such holding shall not affect the remaining sections of such ordinance. We think Section 8 is separable, and its failure will not affect the remaining portions of such ordinance.

We find also that the complaint under which relator is held contains three other and further counts which state a legal accusation against her, and we therefore affirm the judgment of the lower court remanding relator to the custody of the Chief of Police of Dallas.

The judgment is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

We have examined the State's motion for rehearing with

interest, but ·are not persuaded that the conclusion reached in our original opinion was erroneous. To write further on the question involved would be only an elaboration of what was expressed heretofore. As there pointed out, the courts are at variance in different jurisdictions. We followed those whose reasoning most appealed to us.

The motion for rehearing is overruled.