## THE CONNECTICUT THEATRICAL CORPORATION ET AL. *v.* CITY OF NEW BRITAIN

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued May 5—decided July 26, 1960

*Irving S. Ribicoff,* with whom were *Louise H. Hunt* and *Steven E. Perakos,* for the appellants (plaintiffs).

*Andrew P. Denuzze,* assistant corporation counsel, for the appellee (defendant).

MELLITZ, J. The plaintiffs brought this action for a declaratory judgment determining the validity of an ordinance enacted by the city of New Britain requiring the attendance of a police officer during every performance at a moving picture theater and compelling the owner or operator of the theater to pay to the police benefit fund, for such police services, a sum equal to the officer's pay plus ten cents a day. The plaintiffs also sought an injunction restraining the city from enforcing the ordinance as it applied to their theaters. The trial court concluded that the ordinance was constitutional and enforceable except as to the portion thereof requiring the payment of ten cents per day to the police benefit fund, and the plaintiffs have appealed.

The New Britain charter was adopted by a special

act of the legislature in 1905. 14 Spec. Laws 915. The common council is the legislative body of the city, with power to enact ordinances relating to a variety of subjects, including the establishment and maintenance of a police force, the preservation of order, and the enforcement of laws of the state and ordinances of the city by means of that police force. Id., 935. A provision of the charter confers upon the common council power "to enact ordinances concerning the regulation of moving picture exhibitions and the licensing of such exhibitions or the place where given." 17 Spec. Laws 1114, § 8. An ordinance requires the owner, proprietor, manager or person in charge of any moving picture theater or public dance hall "to have in attendance at every public performance or gathering either a regular or a supernumerary member of the city police force, whose duty it shall be to preserve order and see that all ordinances and statutes are complied with and all exits remain unlocked and all fire escapes be ready for immediate use during the entire performance or gathering." New Britain Ordinances, c. 13, § 11 (1952). The ordinance provides further that the owner shall be required to pay to the police benefit fund for police services a sum equal to the pay of the policeman plus 10 cents per day. By an amendment in 1952, a $10 rate of pay per day for police was established. In 1927, the legislature enacted what is now General Statutes § 29-109, the pertinent portion of which reads: "No moving picture projector involving the use of a photographic film shall be operated in any public building or place of public assemblage or entertainment until such precautions as the commissioner of state police specifies have been taken against fire, panic or other personal hazards and a certificate of approval for such prem-

ises obtained from the commissioner specifying the number of persons that may be admitted to such premises or place at any one time." Detailed regulations were promulgated by the commissioner of state police pursuant to the statute. These regulations do not require the attendance of police officers at performances. Nor do the regulations provide for protection of theater patrons so far as personal offenses or other violations of the law are concerned. Approximately 200 indoor motion picture theaters come under the jurisdiction of the state police motion picture inspector, and theaters are inspected once or twice a month.

The plaintiffs own or operate all of the moving picture theaters in New Britain. Two of the theaters were acquired in 1929. Attendance has decreased substantially during the last few years. The staff at each theater fluctuates and is increased as attendance increases. The theaters are opened at 1:30 p.m., and policemen are on duty from 2:40 p.m. until closing time; their lunch hour precedes their service at the theaters. From January 30, 1954, to July 20, 1958, there were, in the theaters, five complaints of sexual offenses, seventeen instances of theft reported, and eight instances of disturbances. When the ordinance in question was first enacted in 1916, moving pictures were shown in darkness, the film used was very flammable, there were no safety projection booths, and exits were inadequate. At the present time, boiler rooms are fireproofed; nonflammable film is used; projection booths are insulated and fireproofed; panic hardware, permitting exits to be opened simply by pushing, is used on all doors; films are shown in semidarkness rather than in complete darkness; and all theaters are equipped with emergency lighting systems.

The basic contentions of the plaintiffs are that the New Britain charter conferred no power upon the city to enact an ordinance requiring the plaintiffs to pay for the services of policemen assigned to their theaters; that the ordinance is unconstitutional and invalid in that it bears no relationship to the public health, morals and welfare and violates the equal protection clause of the fourteenth amendment to the federal constitution and § 1 of article first of the state constitution; and that § 29-109 of the General Statutes vests in the state police exclusive jurisdiction to regulate moving picture theaters with respect to all personal hazards.

*Hartford* v. *Parsons*, 87 Conn. 412, 87 A. 736, involved an ordinance of the city of Hartford which required the owner or manager of any theater to have in attendance at every performance a member of the police force or of the fire department, to see that all exits remained unlocked during the entire performance and all fire escapes remained ready for immediate use. Id., 414. A legislative purpose to provide safety from fire, smoke and panic is within the police power of the state. *Len-Lew Realty Co.* v. *Falsey*, 141 Conn. 524, 528, 107 A.2d 403. The obvious purpose of the ordinance in *Hartford* v. *Parsons*, supra, was to safeguard persons assembled in theaters from the hazards and dangers of fire and panic. The duty which the ordinance required the city employees to perform was that of seeing to the enforcement of the city ordinances regarding exits and fire escapes and of reporting to the chief of the fire department. We expressed the view (p. 415) that the ordinance was a proper and reasonable exercise of the police power of the city and that the city had the authority to exact, for every performance at which a fireman or policeman was required

to be in attendance, a fee equivalent to his pay. We see no reason to depart from the view which was there expressed and which has been reiterated in *Lake* v. *Bridgeport,* 102 Conn. 337, 341, 128 A. 782. It finds support in the decisions of other jurisdictions. *Tannenbaum* v. *Rehm,* 152 Ala. 494, 44 So. 532; *O'Neil* v. *Providence Amusement Co.,* 42 R.I. 479, 108 A. 887; *Chung Mee Restaurant Co.* v. *Healy,* 86 N.H. 483, 171 A. 263; *American Baseball Club* v. *Philadelphia,* 312 Pa. 311, 167 A. 891; *New Orleans* v. *Hop Lee,* 104 La. 601, 29 So. 214; *Harrison* v. *Baltimore,* 1 Gill (Md.) 264; see *Ventura County* v. *Southern California Edison Co.,* 85 Cal. App. 2d 529, 193 P.2d 512.

*Hartford* v. *Parsons,* supra, was decided in 1913. The ordinance here was enacted in 1916. It was patterned on the Hartford ordinance, and incorporated its provisions regarding exits and fire escapes. The New Britain ordinance was extended to include public dance halls and added a requirement imposing on the police officer in attendance the duty "to preserve order" in addition to the duty of seeing that all exits remained unlocked and all fire escapes were ready for immediate use during the entire performance or gathering. The ordinance also imposed on the police officer the duty of seeing that all ordinances and statutes are complied with, and of rendering a report in writing to the chief of police, "certifying whether all ordinances and laws are complied with and all instructions carried out in detail."

The authority to prescribe precautions against injury by fire, in places of public assemblage or entertainment where moving pictures are shown, was given to the state police in 1909. Public Acts 1909, c. 205. The language of the present statute, § 29-109, was first employed in 1927. Public Acts 1927, c. 231,

§§ 1–3. It evidences a legislative policy to deal, on a state-wide level, with the danger to persons in moving picture theaters from fire, panic and other personal hazards, by lodging in the hands of the commissioner of state police the authority to prescribe the precautions required to be taken. A general law of the state enacted subsequent to an ordinance and covering the same field will take the place of the ordinance and supersede it; and an ordinance enacted after a general law, if it is in conflict with it, will be void. *Shelton* v. *City of Shelton,* 111 Conn. 433, 438, 447, 150 A. 811. In an essential aspect, the ordinance here was designed, as was the Hartford ordinance, to diminish the danger from fire and panic to those assembled in moving picture theaters. In that respect the ordinance and the statute covered the same field. But this does not mean that the ordinance was necessarily superseded by the statute. The ordinance requires, as the statute and the regulations promulgated by the commissioner of state police do not, the presence of a police officer to see to it that all ordinances and statutes are complied with. It embraces the protection of theater patrons from hazards unrelated to those connected with fire or panic; that is, it embraces the general preservation of order under any and all circumstances. When an ordinance and a statute conflict, the statute prevails. But where the General Assembly has delegated to the local government the power to deal with a particular field of regulation, the fact that a statute regulates the same subject in a limited way does not, ipso facto, deprive the local government of the power to act in a more comprehensive, but not inconsistent, manner. *State* v. *Gordon,* 143 Conn. 698, 706, 125 A.2d 477. A statute subsequently enacted may be of such a character

as not to operate to disturb particular matters regulated by a previously existing ordinance, although both cover the same general field. 6 McQuillin, Municipal Corporations (3d Ed.) § 21-35; see *Connecticut Co.* v. *New Haven,* 103 Conn. 197, 202, 130; A. 169. The trial court properly concluded that § 29-109 did not operate to supersede the ordinance.

The ordinance is an exercise of the police power of the city, and whether present conditions require the degree of regulation imposed by the ordinance is a matter for the judgment of the legislative body of the city. Courts can interfere only in those extreme cases where the action taken is unreasonable, discriminatory or arbitrary. *Karen* v. *East Haddam,* 146 Conn. 720, 726, 155 A.2d 921; *Clark* v. *Town Council,* 145 Conn. 476, 482, 144 A.2d 327; *State* v. *Gordon,* supra, 703; *Cyphers* v. *Allyn,* 142 Conn. 699, 705, 118 A.2d 318. Every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt. *Amsel* v. *Brooks,* 141 Conn. 288, 294, 106 A.2d 152. The conclusion of the court that in the light of these principles the invalidity of the New Britain ordinance has not been established may not be disturbed.

There is no error.

In this opinion the other judges concurred.