JAY AARON v. CONSERVATION COMMISSION OF THE TOWN OF REDDING ET AL.

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued January 8—decision released April 21, 1981

*Robert A. Fuller,* for the appellant (plaintiff).

*Samuel M. Chambliss,* for the appellees (defendants).

ARTHUR H. HEALEY, J. The plaintiff is a property owner and a builder in the town of Redding where he owns an 11.6 acre parcel of land and other land not involved in this case. The defendant[1] is the conservation commission of the town of Redding, which is the inland wetlands agency for that town.[2] The plaintiff instituted this action seeking both a declaratory judgment determining the validity of certain regulations of the commission and injunctive relief. The plaintiff has appealed to this court from the judgment declaring the rights of the parties and denying him injunctive relief.[3]

---

[1] The town of Redding is also a named defendant which, of course, is bound by the judgment of the trial court and this court. For convenience, however, we will refer to the commission as the defendant.

[2] The commission is authorized to act as the local inland wetlands agency of Redding under General Statutes §§ 22a-39 through 22a-45 and a Redding town ordinance adopted on March 9, 1973.

[3] The trial court originally refused to entertain the plaintiff's action, and concluded that he should be left to seek redress by other forms of procedure. After our reversal of that decision; see *Aaron* v. *Conservation Commission,* 178 Conn. 173, 422 A.2d 290 (1979); the trial court heard and decided the case on the merits.

Although the parties articulate the issues somewhat differently, the plaintiff's challenges to the commission's authority are all grounded on the claim that the commission, in asserting its regulatory posture, has either exceeded its statutory authority in certain instances or has acted on matters specifically excepted from its jurisdiction. The specific issues involved in this appeal are: (1) whether the provisions of §§ 1.9, 1.15 and 1.16 of the commission's regulations which are not contained in General Statutes §§ 22a-38 (13), 22a-38 (16) and 22a-38 (15), respectively, and whether § 5.1 of the regulations requiring an application to be made to the commission to determine if the anticipated activity is exempt from regulation, are valid; (2) whether a residential septic system is exempt from regulation by the commission as a use incidental to the enjoyment of residential property under General Statutes § 22a-40 (a) (4); and (3) whether a domestic residential septic system is exempt from regulation by a local inland wetlands agency because of the allegedly exclusive jurisdiction over the regulation of such systems of the Connecticut public health department and the state department of environmental protection (DEP).

The factual circumstances, which were set out in an extensive stipulation,[4] and incorporated by the trial court in its memorandum of decision, disclose the following: In 1977, the plaintiff applied for a building permit to build a residential dwelling on a portion of an 11.6 acre parcel he owned in Redding. The building inspector denied him a permit because the proposed location of the septic system was less than 150 feet from a water course and, therefore, as a regulated activity, the proposed

[4] In addition, the parties stipulated to eight exhibits.

septic system violated the town's inland wetlands regulations.[5] After being refused a building permit, the plaintiff applied to the commission for an inland wetland permit, reserving by letter his right to question the jurisdiction of the commission over his application. After he instituted an action sounding in mandamus, the commission issued the permit for the septic system.

Thereafter, the plaintiff sought to construct a second dwelling on the remainder of the 11.6 acre parcel. This second septic system would also be located within 50 feet of a wetland and 150 feet of a water course. The plaintiff could not obtain a building permit until he had first applied to, and had been granted a new inland wetland permit by, the commission. The plaintiff refused to make such an application to the commission, claiming, as he had earlier, that the commission had no jurisdiction because the septic system would be outside of any wetland or water course. He then brought this action seeking a declaratory judgment and injunctive relief.[6]

[5] In 1974, the commission had adopted regulations regulating septic systems, i.e., subsurface waste disposal systems, and other activities 150 feet outside of a water course and 50 feet outside of of a wetland.

[6] After the plaintiff commenced this action, the Redding planning commission gave the plaintiff permission to subdivide the 11.6 acre parcel into two lots, one containing 6.4 acres and the other containing 5.1 acres. The plaintiff obtained a building permit and other necessary permits (including the one previously issued by the commission) for the 6.4 acre parcel and started site work on it. The 5.1 acre parcel is the subject of this appeal. It is for this parcel that the plaintiff has not made an application to the commission for a new inland wetland permit. He has, however, hired an engineer who did a septic system plan for the 5.1 acre parcel. The Redding town sanitarian acknowledged that the proposed septic system was in conformity with the public health code requirements, and the design and location of the proposed septic system had been approved by the Connecticut state health department.

The trial court found for the defendants. In doing so, it essentially held that the commission's challenged regulations were valid and that the commission had authority to regulate septic systems located outside of a wetland or water course, and that such a system, although designed by a licensed civil engineer and approved by the state health department and local sanitary officials, still required a permit from the commission. While the issues are framed in more detail by the parties, our summary of the ultimate disposition by the trial court presents the essence of its holding.

I

The plaintiff first claims that §§ 1.9, 1.15, 1.16 and 5.1 of the commission's regulations are invalid and exceed the grant of authority to the commission by the statutes and the local inland wetlands ordinance. Section 1.9 defines "regulated activity"; § 1.15 defines "water courses"; § 1.16 defines "wetlands"; and § 5.1 involves the requirement of applying to the commission before carrying on a "regulated activity." Responding to the claims of invalidity and of exceeding its grant of statutory authority, the commission admits that these regulations are not the same as the statutory sections which they parallel. The commission maintains, however, that the regulations are valid because they are within the scope of the authority given the local agency by statute to adopt regulations in order to carry out the purposes of the Inland Wetlands and Water Courses Act, as well as within the guidelines for agency rulemaking as set forth in *Page v. Welfare Commissioner,* 170 Conn. 258, 266, 365 A.2d 1118

(1976).[7] In taking this position, the defendant argues, in opposition to the plaintiff's claim, that these regulations do not conflict with, but rather are in conformity with, the statute.

Before we discuss the merits of the plaintiff's claims, we initially note that "[e]very intendment is to be made in favor of the validity of the ordinance[s], and it is the duty of the court to sustain the ordinance[s] unless [their] invalidity is established beyond a reasonable doubt." *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 553, 163 A.2d 548 (1960). An agency which has the authority to enact regulations is vested with a large measure of discretion, and the burden of showing that the agency has acted improperly rests upon the one who asserts it. *Riley* v. *Board of Police Commissioners,* 147 Conn. 113, 117, 157 A.2d 590 (1960).

The enabling statutes of "The Inland Wetland and Water Courses Act" are found in General Statutes §§ 22a-28 through 22a-45, chapter 440. The Redding Inland Wetlands ordinance, enacted under the authority of the statutes, is a municipal legislative enactment, and the same canons of construction are applicable as though it were enacted as a state statute. See *Duplin* v. *Shiels,* 165 Conn. 396, 398, 334 A.2d 896 (1973); *Great Atlantic & Pacific Tea Co.* v. *Scheuy,* 148 Conn. 721, 723, 167 A.2d 862 (1961); 1A Sutherland, Statutory Construction (4th Ed.) § 30.06. The plaintiff's brief concedes that the statutes give the commission some regulatory

---

[7] That case held that "[a]n administrative agency, in making rules and regulations, must act within its statutory authority, within constitutional limitations, and in a lawful and reasonable manner." *Page* v. *Welfare Commissioner,* 170 Conn. 258, 262, 365 A.2d 1118 (1976).

authority over inland wetlands and water courses and that, within the statutory grant of authority, the defendant commission, as any administrative agency, has "considerable discretion" as to the content of its regulations. The plaintiff, however, argues that the commission may not, as the plaintiff claims it has, enlarge the statutory jurisdiction granted to it. He recognizes, nevertheless, that the statutory scheme envisions a dual system of regulation, and claims that the regulation of inland wetlands is "primarily a matter of state, not local, concern."

A statute should be interpreted according to the policy which the legislation seeks to serve. See 2A Sutherland, Statutory Construction (4th Ed.) §§ 56.01 to 56.02. General Statutes § 22a-36, which is entitled "Inland Wetlands and Water Courses. Legislative Finding," sets out in great detail the purposes of our legislature in enacting this act. After declaring that "[t]he inland wetlands and water courses . . . are an indispensable and irreplaceable but fragile natural resource," and that their "preservation and protection . . . from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state," the section sets forth a number of the purposes behind the enactment of the act. The legislation, inter alia, seeks "to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and water courses by minimizing their disturbance and pollution; [and by] maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority . . . ." The act attempts to provide

"an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn."[8]

In order to carry out these legislative concerns, the act expressly allows municipal regulation of wetlands and water courses. General Statutes § 22a-42 states: "To carry out and effectuate the purposes and policies of Sections 22a-36 to 22a-45, inclusive, it is hereby declared to be the public policy of the state to encourage municipal participation by means of regulation of activities affecting the wetlands and water courses within the territorial limits of the various municipalities or districts." Besides authorizing the creation of local commissions or boards through local action, the act also provides

---

[8] General Statutes § 22a-36 reads in its entirety: "The inland wetlands and water courses of the state of Connecticut are an indispensable and irreplaceable but fragile resource with which the citizens of the state have been endowed. The wetlands and water courses are an interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and control of flooding and erosion; to the recharging and purification of ground water; and to the existence of many forms of animal, aquatic and plant life. Many inland wetlands and water courses have been destroyed or are in danger of destruction because of unregulated use by reason of the deposition, filling or removal of material, the diverson or obstruction of water flow, the erection of structures and other uses, all of which have despoiled, polluted and eliminated wetlands and water courses. Such unregulated activity has had, and will continue to have, a significant, adverse impact on the environment and ecology of the state of Connecticut and has and will continue to imperil the quality of the environment thus adversely affecting the ecological, scenic, historic and recreational values and benefits of the state for its citizens now and forever more. The preservation and protection of the wetlands and water courses from random, unnecessary, undesirable and unregulated uses, disturbance

that: "Municipal or district ordinances or regulations may embody any regulations promulgated hereunder, in whole or in part, or may consist of other ordinances or regulations *in conformity with* regulations promulgated hereunder . . . ." (Emphasis added.) General Statutes § 22a-42(e); see General Statutes § 22a-42 (c). Significantly, the act also provides that: "Any ordinances or regulations *shall be for the purpose of effectuating the purposes of Sections 22a-36 to 22a-45, inclusive,* and, a municipality or district, in acting upon ordinances and regulations *shall give due consideration to the standards set forth in Section 22a-41.*"[9] (Emphasis

or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state. It is, therefore, the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and water courses by minimizing their disturbance and pollution; maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority; preventing damage from erosion, turbidity or siltation; preventing loss of fish and other beneficial aquatic organisms, wildlife and vegetation and the destruction of the natural habitats thereof; deterring and inhibiting the danger of flood and pollution; protecting the quality of wetlands and water courses for their conservation, economic, aesthetic, recreational and other public and private uses and values; and protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn."

[9] General Statutes § 22a-41 provides: "In carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

(a) The environmental impact of the proposed action;

(b) The alternatives to the proposed action;

(c) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;

added.) General Statutes § 22a-42 (e). This legislation demonstrates the legislative concerns in this area. It requires no construction to conclude that local regulation was not only anticipated, but expressly authorized. It is this broad statutory mandate authorizing regulations on both the state and local levels, with specific legislative findings and declaration of policy, that serves as the setting in which we evaluate the claims of the parties. In doing so, we are mindful that the statutory scheme of this legislation envisages its adaptation to infinitely variable conditions for the effectuation of the purposes of these statutes.

## A

Section 1.9 of the commission's regulations is entitled "Regulated Activity." It deals with the regulation of activities occurring outside the physical boundaries of wetlands and water courses by providing that the location of any portion of a septic system within 200 feet of certain designated mean water lines, within 150 feet of such water line of all other water courses, and within 50 feet of all wetlands is deemed to be a regulated activity.[10] The

---

(d) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;

(e) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and

(f) The suitability or unsuitability of such activity to the area for which it is proposed."

[10] Section 1.9 of the commission's regulations provides:

" 'Regulated activity' means any operation within, or use of, a wetland or water course involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or water courses. The location of any portion of any subsurface waste disposal system within 200 feet of the mean water line of Norwalk, Saugatuck, Aspetuck and Little Rivers; Great, Umpawaug,

plaintiff claims that this regulatory concept of "set-backs" is invalid as it has no support in the statutes.[11] We do not agree.

An examination of the act reveals that one of its major considerations is the environmental impact of proposed activity on wetlands and water courses, which may, in some instances, come from outside the physical boundaries of a wetland or water course. It recognizes, for example, that pollution "of any waters of the state" may be produced, inter alia, "by any public or private sewer or otherwise so as directly or indirectly to come in contact with any waters. . . ." General Statutes § 22a-38 (8). This legislation also includes within its definition of "regulated activity" "any . . . use of a wetland or water couse involving . . . any . . . alteration or pollution, of such wetlands or water courses . . . ." General Statutes § 22a-38 (13). "Obviously, one can 'cause' pollution (or many of the other regulated activities) of a wetlands by actions on parcels adjacent to and perhaps even remote from designated wetlands areas." Tondro, Connecticut Land

Steichens', Factory, Sterritt's, South, Falls and Hedmond's Ponds; Mirror Lake and Saugatuck Reservoir; 150 feet of such water line of all other water courses and 50 feet of all wetlands is deemed a regulated activity. . . ."

[11] The plaintiff points to both General Statutes § 22a-38 (13) and § 22a-42a(c). The former provides: " 'Regulated activity' means any operation within or use of a wetland or water course involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands, or water courses, but shall not include the specified activities in section 22a-40." General Statutes § 22a-42a (c) provides in part that "no regulated activity shall be conducted *upon* any inland wetland without a permit. Any person proposing to conduct or cause to be conducted a regulated activity *upon* an inland wetland shall file an application with the inland wetlands agency of the town . . . ." (Emphasis added.)

Use Regulation (1979), p. 130.[12] Clearly, then, section 1.9 is not in conflict with or in excess of the statutory grant of authority; rather it reasonably implements the statutory authority to effectuate the legislative purpose.

That a matter is of concurrent state and local concern is no impediment to the exercise of authority by a municipality through the enactment of an ordinance, so long as there is no conflict with the state legislation. See *State* v. *Gordon,* 143 Conn. 698, 706, 125 A.2d 477 (1956); *City of Junction City* v. *Lee,* 216 Kan. 495, 498-99, 532 P.2d 1292 (1975). Where the state legislature has delegated to local government the right to deal with a particular field of regulation, the fact that a statute also regulates the same subject in less than full fashion does not, ipso facto, deprive the local government of the power to act in a more comprehensive, but not inconsistent, manner. See *Connecticut Theatrical Corporation* v. *New Britain,* supra; *State* v. *Gordon,* supra, 706; see also *Page* v. *Welfare Commissioner,* supra.

A local ordinance, enacted pursuant to the police power, is not necessarily inconsistent with a state law on the same subject just because the ordinance provides higher standards than the statute. See *Hunter* v. *Adams,* 180 Cal. App. 2d 511, 519, 4 Cal. Rptr. 776 (1960); *City of Beloit* v. *Lamborn,* 182 Kan. 288, 292, 321 P.2d 177 (1958).

[12] Professor Tondro observes that the regulations of the commissioner of the Department of Environmental Protection "appear to adopt this reasoning in the definition of 'significant activity or major effect' in section 22a-39-2 (15), particularly when read together with the regulations defining the circumstances under which the Commissioner may issue a summary finding, call a public hearing, or request further information." Tondro, Connecticut Land Use Regulation (1979), p. 130.

A test frequently used to determine whether a conflict exists is whether the ordinance permits or licenses that which the statute forbids, or prohibits that which the statute authorizes; if so, there is a conflict. If, however, both the statute and the ordinance are prohibitory and the only difference is that the ordinance goes further in its prohibition than the statute, but not counter to the prohibition in the statute, and the ordinance does not attempt to authorize that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict. See *City of Junction City* v. *Lee,* supra; *Heubeck* v. *City of Baltimore,* 205 Md. 203, 208–209, 107 A.2d 99 (1954); 56 Am. Jur. 2d, Municipal Corporations § 374. Where a municipal ordinance merely enlarges on the provisions of a statute by requiring more than a statute, there is no conflict unless the legislature has limited the requirements for all cases. *City of Junction City* v. *Lee,* supra. Under this reasoning, we conclude that § 1.9 of the commissioner's regulations is not invalid. Likewise, as discussed below, we hold that the other regulations challenged by the plaintiff, although they contain language not found in the state statutes, do not conflict with the statutes, are "in conformity with" the statutes, and are therefore valid.[13]

---

[13] We note that § 11.2 of the regulations adopted under General Statutes § 22a-39 supports the analysis we undertake. That section, entitled "Conformity of local regulations," states: "The commissioner [of the Department of Environmental Protection] shall examine such regulations, including maps and amendments, to determine their conformity with the Act and with these regulations in terms of a) procedural safeguards, b) completeness of wetland and water course coverage, c) adequacy of enforcement machinery and information gathering procedures, and d) substantial adherence to the policies and goals of the Act."

## B

The plaintiff claims that § 1.15 of the commission's regulations is invalid because of its "material deviation" from General Statutes § 22a-38 (16), which defines "water courses." The thrust of the defendant's objection is that the addition in § 1.15 of the words "vernal or intermittent"[14] to the definition of "water course" is a material change which "greatly enlarges the commission's jurisdiction, and accordingly that portion of the definition is void as conflicting with section 22a-38 (16) . . . ." We disagree.

Section 22a-38 (16) states that " '[w]ater courses' means rivers, streams, brooks, waterways, lakes, ponds, marshes, swamps, bogs and *all other bodies of water,* natural or artificial, public or private . . . not regulated pursuant to sections 22a-28 to 22a-35." (Emphasis added.) This is a comprehensive definition; the incorporation of "vernal or intermittent" into the definition is reasonable and clarifying, and merely includes waters that could fairly be said to fall within the broad meaning of "water courses" in the statute. The plaintiff's attack on section 1.15 cannot be sustained.

## C

The plaintiff goes on to claim that § 1.16 of the regulations is invalid because of certain additional language it contains not found in § 22a-38 (15).

---

[14] The plaintiff suggests that "[a] vernal or intermittent body of water is one which has water in it during only a portion of the year but which generally does not contain water." "Vernal" is defined as "appearing or occurring in the spring . . . relating to, or characteristic of the spring." Webster, Third New International Dictionary.

That statute provides that wetlands means "land, including submerged land . . . which consists of any of the soil types designated as poorly drained, very poorly drained, alluvial, and flood plain by the National Cooperative Soils Survey, as may be amended from time to time, of the Soil Conservation Service of the United States Department of Agriculture." Section 1.16 contains almost verbatim the same language of this statute, but adds that such soil types "are generally shown for informational purposes only on a map on file in the office of the Town Clerk entitled 'Soils Survey Map, Redding, Connecticut.' In each instance, however, the actual character of the soil shall determine whether land in question is subject to regulations." We disagree with the plaintiff's contention that § 1.16 is void because of this additional language. Because the same types of soil are being regulated, and because, in each instance, it is the type of soil which is determinative of whether certain land is a wetland, there is no conflict. This language does not expand the jurisdiction of the commission. While the statute defines "wetlands" and how it can be determined, the language in § 1.16 implements the statutory purposes of the act by setting forth permissible standards to assist in determining, informationally, whether a particular location is the situs of a wetland.[15]

---

[15] The plaintiff also appears to attack that portion of § 1.15 which, after setting forth the definition of "water courses," includes the following language: "which are generally shown for informational purposes only on a map on file in the office of the Town Clerk entitled 'Soils Survey Map, Redding, Connecticut.'" As with § 1.16, we find no conflict with the state definition. See Connecticut General Statutes § 22a-38 (16).

## D

Section 5.1[16] of the regulations is, the plaintiff claims, illegal because by it the commission seeks to give itself jurisdiction over activities which have been made exempt by statute. He argues that the requirement in the regulation that one who wishes to carry on a "permitted operation or use," must apply first to the commission to obtain a license expands the commission's jurisdiction. This is so, he claims, because § 22a-40 (a) (4) "makes these operations and uses permitted in wetlands and water courses as of right."

We decline to conclude that § 5.1 is invalid here for two reasons. First, the administrative requirement that one apply to the commission in order to determine if his application is one for an exempt use or operation under § 22a-40 (a) is, in and of itself, valid and is administratively necessary for the commission to discharge its function under the enabling statutes. Second, the exemptions under § 22a-40 (a) (4) for "uses incidental for the enjoyment and maintenance of residential property" do not appear to be unlimited, and there should be an administrative determination of any claimed exemption.

## II

The plaintiff claims that a septic system is exempt (and not a "regulated activity") under Gen-

---

[16] Section 5.1 provides the following:

"Any person wishing to carry on any regulated activity set forth in Section 3, or to engage in any permitted operation or use set forth in Section 2.14 or 2.2 shall first obtain a license therefor from the Commission . . . ."

eral Statutes § 22a-40 (a) (4)[17] because it is a use "incidental for the enjoyment and maintenance of residential property." He claimed, in oral argument before us, that the word "incidental" is focal. Statutes are to be construed to carry out the intent of the legislature. *Farms Country Club, Inc.* v. *Carini,* 172 Conn. 439, 444, 374 A.2d 1094 (1977); *Little* v. *Ives,* 158 Conn. 452, 455, 262 A.2d 174 (1969). "The intention of the legislature, expressed in the language it uses, is the controlling factor and the application of common sense to the language is not to be excluded." *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133 (1976). It is basic that a statute is to be construed as a whole; *Rustici* v. *Stonington,* 174 Conn. 10, 13, 381 A.2d 532 (1977); *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 411, 311 A.2d 65 (1972); and that if the statute is clear and unambiguous there is no room for construction. See *Johnson* v. *Personnel Appeal Board,* 174 Conn. 519, 521–22, 391 A.2d 168 (1978); *Madison Education Assn.* v. *Madison,* 174 Conn. 189, 192, 384 A.2d 361 (1978). The general principle that a statutory term is to be given the meaning it has "according to the commonly approved usage of the language" is particularly appropriate in this case. See *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 423,

---

[17] General Statutes § 22a-40(a)(4) provides: "(a) The following operations and uses shall be permitted in wetlands and water courses, as of right:

(4) Uses incidental for the enjoyment and maintenance of residential property, such property defined as equal to or smaller than the largest minimum residential lot site permitted anywhere in the municipality, provided in any town, where there are no zoning regulations establishing minimum residential lot sites, the largest minimum lot site shall be two acres. Such incidental uses shall include maintenance of existing structures and landscaping but shall not include removal or deposition of significant amounts of material from or onto a wetland or water course or diversion or alteration of a water course."

426 A.2d 1324 (1980); *International Business Machines Corporation* v. *Brown*, 167 Conn. 123, 134, 355 A.2d 236 (1974). One claiming the benefit of an exception under a statute has the burden of proving that he comes within the limited class for whose benefit it was established. See *Goodwin* v. *Giovenelli*, 117 Conn. 103, 107, 167 A. 87 (1933). Exemptions are to be strictly construed. See *Kulis* v. *Moll*, supra, 110.

The exemption to which the plaintiff refers speaks to "[u]ses incidental for the enjoyment *and* maintenance of residential property . . ." (emphasis added); it also provides: "Such incidental uses shall include maintenance of existing structures and landscaping but shall not include removal or deposition of significant amounts of material from or onto a wetland or water course or diversion or alteration of a water course. . . ." "Maintenance" is defined to mean "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency," and "existing" is that "which has actual or real being." Webster, Third New International Dictionary. It is apparent that § 22a-40 (a) (4) is intended to apply only to that which is already in existence on residential property, including residences. As the defendant points out, it cannot be claimed that the "enjoyment" of property which is not actually residential, i.e., on which there is not a residence, requires the location of a septic system on it. We conclude that the plaintiff has not proven that under § 22a-40 (a) (4) he is entitled to an exemption from a "regulated activity" under the commission's regulation or § 22a-38 (13).[18]

[18] We have assumed, without deciding, and because the parties have so treated it, that the installation of a septic system on residential property as defined in § 22a-40 (a) (4) is a "use" under that statute. Our disposition of this claim does not require that we

## III

The plaintiff claims finally that septic systems, i.e., subsurface sewage disposal systems, are exempt from any regulation by an inland wetlands commission since the legislature has granted exclusive authority to regulate conventional domestic septic systems to the state public health department and the department of environmental protection. In making this claim, he points to General Statutes § 25-54i (g), under which the commissioner of the department of environmental protection is authorized to adopt regulations setting up "categories of discharges which constitute household and small commercial subsurface disposal systems for which he shall delegate to the commissioner of health services the authority to issue permits or approvals . . . ." That statute, which is part of General Statutes chapter 474a, entitled "Water Pollution Control," also provides that: "The commissioner of health services shall . . . establish *minimum* requirements for household and small commercial subsurface disposal systems and procedures for the issuance of such permits or approvals by the local director of health or a sanitarian."[19] (Emphasis added.)

reach the question of what "use" might be "incidental" for the enjoyment and maintenance of such property, but we note that the plaintiff does say in his brief that "a septic system is thus a use incidental for the enjoyment and maintenance of residential property; indeed it is *essential* for the use of the residence." (Emphasis added.) The plaintiff recognizes that because there are no public sewers in Redding, and because under the public health code a residence must be served by a septic system, without one, a certificate of occupancy cannot be obtained for a residence.

[19] General Statutes § 25-54i (g) provides in full:

"(g) The commissioner [of environmental protection] shall, by regulation adopted prior to October 1, 1977, establish and define categories of discharges which constitute household and small com-

We have already examined the sweeping legislative purposes sought to be achieved by the Inland Wetlands and Water Courses Act; see General Statutes § 22a-36; and the broad grant of authority to the municipalities to carry out and effectuate the purposes and policies of the act. See General Statutes § 22a-42. To interpret § 25-54i (g) as precluding the municipal regulation of sewage systems would clearly work to undermine some of the basic purposes of the act, which seeks not only to protect the state's inland wetlands and water courses from pollution, but also to preserve their very existence and protect them from any disturbance, whether polluting or not, which could affect their "conservation, economic, aesthetic, recreational" or other values. See General Statutes § 22a-36. Moreover, although § 25-54i (g) and § 22a-42 both apply to the regulation of household sewage systems, and are concerned with the discharge of any substance into waters of the state, § 22a-42 is also concerned with the possible adverse effects which may occur upon inland wetlands and water courses by the very construction or installation of such a system. See Gen-

mercial subsurface disposal systems for which he shall delegate to the commissioner of health services the authority to issue permits or approvals and to hold public hearings in accordance with this section, on and after said date. The commissioner of health services shall, pursuant to section 19-13, establish minimum requirements for household and small commercial subsurface disposal systems and procedures for the issuance of such permits or approvals by the local director of health or a sanitarian registered pursuant to chapter 395. As used in this subsection, small commercial disposal systems shall include those subsurface disposal systems with a capacity of five thousand gallons per day or less. Any permit denied by the commissioner of health services, or a director of health or registered sanitarian shall be subject to hearing and appeal in the manner provided in section 19-103. Any permit granted by said commissioner of health services, or a director of health or registered sanitarian on or after October 1, 1977, shall be deemed equivalent to a permit issued under subsection (b) of this section."

eral Statutes § 22a-38 (13). Thus, to achieve the broader purposes of this act, the legislature has authorized municipalities to set up local inland wetlands agencies to promulgate regulations in conformity with those of the commission. See General Statutes § 22a-42. That agency "shall serve as the sole agent for the licensing of *regulated activities*," (emphasis added) as that term is defined under the Inland Wetlands and Water Courses Act. See General Statutes §§ 22a-42(c), 22a-38 (13).

Finally, although the statutes may seek to regulate the same activity, and thus the jurisdiction of the local and state agencies overlaps, it is not unusual for one seeking a permit for a certain use or operation to apply to and be given such permission or license by more than one agency of government.

There is no error.

In this opinion the other judges concurred.