LEWIS A. LIZOTTE ET AL. *v.* CONSERVATION COMMISSION OF SOMERS ET AL.

| SUPERIOR COURT | JUDICIAL DISTRICT OF TOLLAND | FILE NO. 42173S |
|---|---|---|

Memorandum filed November 29, 1989

*Ronald P. Sherlock,* for the plaintiffs.

*Berger, Alaimo, Santy & McGuire,* for the named defendant and the defendant town of Somers.

*David H. Wrinn,* assistant attorney general, and *Clarine Nardi Riddle,* attorney general, for the defendant commissioner of environmental protection.

JACKAWAY, J. This is an action for a declaratory judgment brought pursuant to Practice Book § 390. The plaintiffs all claim to have various ownership interests in certain tracts of land in Somers. The defendants are the Somers conservation commission, the town of Somers and the commissioner of the department of environmental protection, a state agency. The plaintiffs have brought this action seeking a declaratory ruling that § 6.4 of the revised Somers Inland Wetlands and Watercourses Regulations adopted on June 1, 1988, is invalid because the regulation contains mandatory minimum separation distances between wetlands and watercourses and septic systems and buildings. The plaintiffs also seek injunctive relief barring the application of this restrictive regulation. All parties seek a declaratory judgment.

The first issue for the court to address is the question of standing to take the action by the plaintiffs. Practice Book § 390 (c) states: "The Court will not render declaratory judgments upon the Complaint of any person . . . where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure . . . ."

These same plaintiffs had previously instituted an action challenging the adoption of the regulations;

*Lizotte* v. *Somers Conservation Commission,* Superior Court, judicial district of Tolland, Docket No. 40503 (August 2, 1988); and that case was still pending at the time the present action was instituted. That appeal, however, was decided in favor of the Somers conservation commission on the basis that the plaintiffs failed to prove hardship, and the appeal was dismissed.

All parties in the present action have strongly urged the court to issue a declaratory judgment putting the issues to rest once and for all, and the court agrees not to apply the restriction of Practice Book § 390 (c). The court, therefore, finds that the plaintiffs have standing to take this action. See also *Aaron* v. *Conservation Commission,* 178 Conn. 173, 422 A.2d 290 (1979).

The issue thus remaining for consideration is the validity of § 6.4 of the regulations.[1] The court conducted the trial of the matter over several days through the months of July and August, 1989, and the following factual patterns were presented to the court.

[1] Section 6.4 of the Somers Inland Wetlands and Watercourses Regulations provides: "REGULATED ACTIVITIES TO BE LICENSED 6.4 Restrictions Adjacent to Watercourses or Inland Wetlands

"a. No septic system, tank, leach field, dry well, chemical waste disposal system, manure storage area, or any other pollution source (all hereinafter referred to as 'system') shall be constructed or maintained in such a way that the closest point of any such system is nearer than one hundred fifty (150) feet to the nearest edge of the seasonal high water level of a watercourse or inland wetland. No system, at any distance from such watercourse or inland wetland, shall be constructed or maintained in such a manner so as to drain into any such watercourse or inland wetland. The one hundred fifty (150) foot separation may be reduced to one hundred (100) feet for one (1) and two (2) family dwellings and commercial buildings generating less than 225 gallons per day, subject to the provisions of the State of Connecticut Public Health Code and Basic Building Code and the following additional requirements. A qualified professional engineer registered in the State of Connecticut shall submit to the Somers Sanitarian for his review and approval:

"1. A plan for on-site sewage disposal demonstrating that the requested reduction in separation distance for the watercourse or inland wetland will

All four plaintiffs testified that they were in the business of building substantial residential developments within Somers for several years. All either had title to various undeveloped residential tracts in their own names, through corporate entities, or in the form of partnership interests. All were familiar with the restriction placed on the development of land by § 6.4 of the regulations. In considering whether to purchase land for development, the primary criteria considered are (1) cost of construction, (2) aesthetics of the area to be developed, (3) location of the area, (4) number of lots to be utilized, and (5) access. The basic intent is to maximize the number of lots per parcel to be developed.

Patricia Gatzkiewicz, the town planner, testified that the origin of § 6.4 was the zoning regulations, which

not result in drainage reaching the watercourse or inland wetland, or that such drainage, if reaching the watercourse or inland wetland will meet State Department of Environmental Protection regulations and standards for quality of discharge into the watercourse or inland wetland.

"2. The plan shall also contain an erosion stabilization and sedimentation control plan, as required by the Somers Sanitarian, designed to protect the watercourse or inland wetland during construction and following development until permanent vegetation is established.

"3. No building permit shall be issued on any premises wherein the separation distance is less than one hundred fifty (150) feet unless accompanied by a statement from the Somers Sanitarian that this section has been complied with.

"b. No building used for the purpose of sheltering animals shall be constructed in such a way that the closest point to the nearest edge of the seasonal high water level of a watercourse or inland wetland is less that one hundred fifty (150) feet from the watercourse or inland wetland. No other building or structure shall be constructed in such a way that the closest point to the nearest edge of the seasonal high water level of a watercourse or inland wetland is less than fifty (50) feet from said watercourse or inland wetland. An erosion stabilization and sedimentation control plan shall be submitted to the Somers Sanitarian for his review and approval where the building is within one hundred (100) feet of a watercourse or inland wetland. Erosion control measures shall be implemented and maintained until permanent vegetation cover is established.

"c. In the event that the foregoing regulations contained in Section 6.4 conflict with either the State of Connecticut Public Health Code or Basic Building Code, the stricter standard shall prevail."

were first adopted in the 1970s. Recommendations to the town planner to incorporate § 6.4 in the new regulations came from the zoning board of appeals, the zoning commission and the conservation commission. Gatzkiewicz further stated that no such 150 foot restiction exists in the state inland wetlands regulations. She also stated that none of the model regulations contains language similiar to § 6.4. It was her contention that § 6.4 was proposed to prevent injury to wetlands.

The plaintiffs then offered the testimony of Douglas E. Cooper, an employee of the department of environmental protection (department). He has been with the department for nine and one-half years and previously served in various capacities as an environmental planner. Cooper stated that the department assisted the town of Somers in adopting the 1988 regulations. It was his opinion, and that of the department, that the proposed regulations did comply with the state regulations although the state regulations did not contain a 150 foot setback requirement. It was his opinion that the setback provision was adopted to avoid pollution, although "there is nothing magic about the 150 feet setback." Cooper further stated that other communities do not have specified setback requirements but that after the decision in *Aaron* v. *Conservation Commission,* 183 Conn. 532, 441 A.2d 30 (1981), many towns adopted specific setback requirements. He regards inland wetlands as a "fragile national resource."

Cooper further testified that he had seen many abuses of septic systems even though they were adequately designed for the use intended. Some of the problems were caused by excessive numbers of persons living in the house, luxurious use of water, the discharge of painting debris from the cleaning of brushes and rollers in bathtubs, the throwing of hazardous materials into house drains wreaking havoc with the systems' biological aspects, the disposal of fats and greases and

the excessive use of garbage disposals for items that should not go down drains. It was his belief that the average life span of a septic system was about twenty years and that 50 percent of all systems would fail at that date. Cooper also described the various setback regulations that have been adopted throughout the state. They range from 350 feet (to protect the quality of a lake) down to 50 or 75 feet (state health code setbacks). It was his opinion from his experience at the department and from witnessing what was happening at the local level, that the 150 foot restriction was not unreasonable.

Cooper was asked his opinion regarding the concept of a buffer or a setback from inland wetlands and watercourses for septic systems and buildings. He stated, in part: "In the real world, having seen that the ideal conditions don't always exist, we don't end up with the perfect design, the perfect installation and the perfect family using exactly the right things in their septic system and we don't get perfectly uniform distribution that we had hoped for; a buffer area is, on many occasions, a very prudent thing to have. It is an insurance policy."

Cooper further stated that a town that relies on ground water supplies has a vested interest in protecting the quality of waters in those aquifers.

It was his further opinion that the 150 foot setback regulation is reasonable. He also opined that the fifty foot setback for buildings other than those for sheltering animals was also reasonable. Finally, he was also of the opinion based on his scientific knowledge and experience, that the 150 foot setback regulation for buildings sheltering animals was reasonable.

The defendant town offered a letter from the department, dated May 2, 1988. That letter, which was signed by John W. Anderson, deputy commissioner, states in

part: "The Department has received the proposed Wetlands and Watercourses Regulations for the Town of Somers, dated April 6, 1988. We hereby find them to be in conformance with Section 22a-36 through 22a-45 of the Connecticut General Statutes, as amended by Public Acts Nos. 87-388 and 87-533, and Sections 22a-39-1 through 13.2 of this Department's Administrative Regulation."

A legal notice of the public hearing on the regulations was published on May 2 and May 13, 1988, and the public hearing was held on May 18, 1988. No one opposed the adoption of the regulations at the public hearing.

The testimony of Steven R. Jacobs, town sanitarian of Somers, revealed his concern with the town's water quality. Only 5 percent to 10 percent of the community is served by public sewage systems, with the remaining portion of the population being served by private septic systems.

There are two sewer systems in Somers, one serving 150 homes and the other serving 41 homes. Jacobs also stated that there are two major aquifers (underground bodies of water) capable of rendering adequate water. The Connecticut Water Company has six wells operating in Somers and five of these wells draw water from the aquifers. Twenty percent of the population is served by the water company, while the balance of the community depends on private wells.

It was Jacobs' opinion that about forty septic systems in the town are repaired each year and that the population of the town is 9500.

The plaintiffs offered the testimony of Sebastian Amenta, an employee of the McGuire Group, which was assisting the plaintiffs in the development of certain residential projects. His position was that a fixed sepa-

ration of 100 feet regarding wetlands is not warranted. There should be some latitude in measuring the detrimental effect, if any. He did not approve the other fixed distances set forth in § 6.4. It was his position that all distances should be based on technical information concerning each proposed site location.

The plaintiffs offered further evidence that, with respect to the development of the Whitaker subdivision, there would be a loss of possibly twenty-five lots because of the restriction of § 6.4, resulting in a claimed loss of $1,500,000 ($60,000 per lot).

Simon Lipton, a witness for the defendants, testified that he has lived in Somers for over seventy years. He is a former member of the sewer commission, the board of finance, and chairman of the conservation commission. Lipton stated that failed septic systems in Somers have been a problem for many years. Two areas of the town are heavily populated and it was necessary to install small disposal facilities to handle this portion of the population. Sewage was running out of the lawns, into the streets and into drainage pipes. The areas involved had a clay base and could not handle the sewage.

Is § 6.4 illegal because it prohibits regulated activities that otherwise may be allowed in wetlands areas? The issue the court must address is whether the prohibition found in § 6.4 of the Somers regulations is rationally related to he protection of the public health, safety and general welfare of the community. *Beacon Falls* v. *Posick,* 212 Conn. 570, 583, 563 A.2d 285 (1989). The plaintiffs argue that a complete prohibition does not flow from the enabling legislation but that certain activities should be permitted subject to further requirements and tests.

In considering the plaintiffs' claim, it is essential that the purpose of the enabling statute be reviewed and

then traced to the adoption of § 6.4 by the Somers conservation commission. General Statutes § 22a-36 states in part: "It is, therefore, the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution; maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority; preventing damage from erosion, turbidity or siltation; preventing loss of fish and other beneficial aquatic organisms, wildlife and vegetation and the destruction of the natural habitats thereof; deterring and inhibiting the danger of flood and pollution; protecting the quality of wetlands and watercourses for their conservation, economic, aesthetic, recreational and other public and private uses and values; and protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn."

General Statutes § 22a-42 then provides for the adoption by municipalities of their own regulations to effectuate the purposes set forth in the enabling legislation, giving due consideration to the standards set forth in General Statutes § 22a-41.

It is the defendants' contention that the town of Somers is empowered to adopt a restrictive regulation in order to protect its wetlands. *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 560, 552 A.2d 796 (1989); *Aaron* v. *Conservation Commission,* 183 Conn. 532, 538–39, 441 A.2d 30 (1981).

Connecticut courts have upheld the prohibition, through zoning, of certain activities within municipalities, after determining that the prohibitions were rationally related to the protection of the public safety, health and general welfare of the municipalities.

In the present case, there was substantial evidence to justify such a prohibition. The soil in Somers is basically clay, providing very poor drainage; the town has been faced with severe sewage drainage problems for years; the town's basic water supply consists of two large aquifers; 80 percent of the homes depend on well water; and the private water company serves five of its six wells by drawing from the aquifers. Finally, Cooper, the department representative testifying for both the plaintiffs and the defendants, was of the opinion that a town that relies on ground water supplies has a vested interest in protecting the water quality and that the restrictions imposed were reasonable. The court finds that the Somers regulation does have a rational basis.

With respect to the plaintiffs' claims that the Somers regulation goes beyond the limits permitted by the enabling legislation, there are certain basic principles that must first be applied. " 'Every intendment is to be made in favor of the validity of the ordinance[s], and it is the duty of the court to sustain the ordinance[s] unless [their] invalidity is established beyond a reasonable doubt.' " *Aaron* v. *Conservation Commission,* surpa, 537, and cases cited therein. "A board which has authority to enact regulatory measures is vested with a large measure of discretion, and the burden of showing arbitrary action rests upon the one who asserts it." *Riley* v. *Board of Police Commissioners,* 147 Conn. 113, 117, 157 A.2d 590 (1960).

"A local ordinance, enacted pursuant to the police power, is not necessarily inconsistent with a state law on the same subject just because the ordinance provides

higher standards than the statute. . . . A test frequently used to determine whether a conflict exists is whether the ordinance permits or licenses that which the statute forbids, or prohibits that which the statute authorizes; if so, there is a conflict. If, however, both the statute and the ordinance are prohibitory and the only difference is that the ordinance goes further in its prohibition than the statute . . . and the ordinance does not attempt to authorize that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict." (Citations omitted.) *Aaron* v. *Conservation Commission,* supra, 543–44. The court finds that the factual pattern meets the above criteria.

For the reasons set forth above it is adjudged and decreed that § 6.4 of the Somers Inland Wetlands and Watercourses Regulations is a valid exercise of the police power and is entirely consistent with the goals and policies contained in the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 through 22a-45.

The request for temporary injunctive relief is denied.